IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KAREN HEETER**, *et al.*, | **:** | |
| | **:** | |
| **Plaintiffs,** | **:** | **Case No. 2:20-cv-6481** |
| | **:** | |
| **v.** | **:** | **Chief Judge Algenon L. Marbley** |
| | **:** | |
| **KENNETH BOWERS**, *et al.*, | **:** | **Magistrate Judge Elizabeth P. Deavers** |
| | **:** | |
| **Defendants.** | **:** | |

## OPINION & ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 21). Oral argument was held in this matter. Following careful consideration and the benefit of oral argument, this Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion.

## I. BACKGROUND

### A. Factual Background[1]

On November 21, 2018, Bill G. Heeter was shot dead by a group of officers from the Columbus Police Department ("CPD") at his residence located at 370 S. Yale Avenue, Columbus, OH 43215 ("the Heeter residence" or "the residence"). (Plaintiffs' Complaint, ECF No. 3 ¶¶ 1, 8). Mr. Heeter resided with his wife and three children; his niece was also present at the residence at the time of Mr. Heeter's death. (*Id.* ¶ 8). Around 9:00 a.m. that morning, either Mr. Heeter's wife (Karen Heeter) (*Id.* ¶ 9), or his brother (Defendants' Motion for Summary Judgment, ECF No. 21 at 7) called 911 stating that Mr. Heeter had made suicidal threats to jump in front of a bus. Several CPD officers including Sergeant Steve Redding responded to the call but left the scene after being unable to locate Mr. Heeter. (ECF No. 3 ¶ 10).

---

[1] At summary judgment, this Court recites the facts in the light most favorable to the non-movant. *See, e.g., Lange v. McGinnis,* 644 F. App'x 672, 673 (6th Cir. 2016); *Jackson v. City of Cleveland*, 925 F.3d 793, 803 (6th Cir. 2019).

At around 9:58 a.m. that same day, Franklin County 911 Dispatch received a call from Karen Heeter, alleging that Mr. Heeter was home, suicidal, in possession of a firearm, and in need of someone to deescalate the situation. (*Id.* ¶ 11). Dispatch noted that Mr. Heeter "said if the police show up[,] he can[']t be held responsible for what happens." (Event Information Report, ECF No. 25-12 at 2). Karen Heeter pleaded with Dispatch that the officers "please don[']t shoot him," referring to Mr. Heeter. (*Id.*). Dispatch additionally made the note that "there may be kids in the home as well (but adults)." (*Id.*). Pursuant to this call, at 10:01 a.m., Defendant Officer Kenneth Bowers, along with Sergeant Joseph Horton, Sergeant Steven Redding, Officer Linda Gibson, Officer Robert Bruce, Officer Scott Stasheen, Officer Matt Baldwin, Officer John Miles, Officer Jeremy Gilbert, and Officer Stephen O'Brien of the CPD returned to the Heeter residence. (*Id.* at 3–4). The officers were greeted by Karen Heeter, who informed them that Mr. Heeter had threatened to kill himself, that he was inside the house with a gun, and that "he'll put the gun down if you guys leave." (*Id.*; *see* Informational Summary of Officer Linda Gibson, ECF No. 25-4 at 1).

Multiple officers, including Defendant Bowers, approached the front door of the home to find Mr. Heeter seated at the dining room table, smoking a cigarette. (ECF No. 3 ¶ 14). Officer Sergeant Redding observed Mr. Heeter through a window and informed the other officers that Mr. Heeter had a gun in his right hand pointed down at the floor. (*Id.*; ECF No. 21 at 10). The Officers ordered Mr. Heeter to come out of the house, which he refused. (ECF No. 3 ¶ 14–16). The officers continued ordering Mr. Heeter to place his gun on the table and exit the house. (*Id.* ¶ 16). One officer told Bill, "Let us help you." Mr. Heeter responded, "I don't need help." (*Id.*). The Officers continued yelling at Mr. Heeter to come out. (*Id.*).

Officer Bruce asked the other officers, "Where's the gun[?]" (*Id.*). One of the officers replied that he couldn't see it, before Sergeant Redding said, "He put it on the table." (*Id.*; Kenneth

Bowers Affidavit, ECF No. 21-1 ¶ 21). Defendant Bowers then said, "You guys ready. Let's move in and take it before he gets it." (Plaintiffs' Opposition Motion to Summary Judgment, ECF No. 25 at 8; Bowers Aff. ¶ 14). At least seven officers then entered Mr. Heeter's home, several with their weapons drawn. (ECF No. 25 at 8; Steven Redding Affidavit, ECF No. 21-11 ¶ 15). Several officers stood near the entryway between the dining room and living room. (ECF No. 25 at 8; Redding Aff. ¶ 16). Defendant Bowers stood with his rifle drawn by the wall separating the dining room from the living room. Officer Redding had a Taser "in an effort to see if non-lethal force could be utilized to secure Mr. Heeter." (Redding Aff. ¶ 17).

Mr. Heeter was standing by a table near the corner of his dining room. (ECF No. 25 at 8; Robert Bruce Body Camera Footage, ECF No. 21-7 at 10:25). There were one or two black cats on the table. (*Id;* Bowers Aff. ¶ 30). The officers instructed Mr. Heeter to walk away from the table and towards the corner of the room with his hands up. (ECF No. 25 at 8–9). In Officer Bruce's body camera footage, one officer can be heard cautioning Mr. Heeter not to "get close to that table" or he "will be shot." (Bruce Body Camera Footage at 10:24–10:27). The officers told Mr. Heeter they were there to help him. (*Id.*). Mr. Heeter largely remained silent during the interaction. (*Id.*; Bruce Body Camera Footage at 10:25–11:32). After some time, he told the officers, "you guys are really starting to tick me off." (ECF No. 25 at 9). The officers continued to ask Mr. Heeter to put his hands up so that they can give him help. (*Id.*). Mr. Heeter declined. (*Id.*). One of the officers repeated their request. (*Id.*). Mr. Heeter responded, "I just want you guys to go, then I'll put the gun down and won't touch it no more." (*Id.*). An officer responded, "No, it doesn't work that way, Bill." (*Id.*).

Officer Bruce's body camera footage then shows Mr. Heeter move slightly towards one of the black cats and lean forward with nothing in his left hand. (Bruce Body Camera Footage at

11:30–11:32). Defendant Bowers then stated, "Where's the gun, I see the cat." (*Id.* at 11:29–11:30). About a second later, Defendant Bowers fired five shots in quick succession from his rifle at Mr. Heeter. (*Id.* at 11:32–11:33). Mr. Heeter received multiple gunshot wounds and fell to the floor face down. (*Id.* at 11:33–11:40).

After Mr. Heeter was shot, he remained lying motionless on the ground. (*Id.* at 11:33–12:40). Officer Bruce and Officer Gilbert then handcuffed him. (*Id.* at 12:40–12:45). The officers then left Mr. Heeter lying face down on his stomach with his hands cuffed behind his back while a pool of blood could be observed gathering underneath him. (*Id.* at 12:50–20:00).

The amount of time between the moment Mr. Heeter was shot (*Id.* at 11:33) and the arrival of the first paramedic from the Columbus Fire Department (*Id.* at 20:05) is approximately 8.5 minutes. Although officers repeatedly coached Mr. Heeter with variations of "hang on, buddy" while he lay waiting for medical attention, no officer rendered any form of medical assistance. (*Id.* at 11:33–20:05). The paramedic immediately flipped Mr. Heeter's body around so that he was lying on his stomach. (*Id.* at 20:07). A pool of blood can be observed below Mr. Heeter as he is flipped around. (*Id.*). Paramedics soon thereafter removed his handcuffs before placing him on a back board and performing CPR. (*Id.* at 24:00–26:20). Paramedics then left to transport Mr. Heeter to Grant Medical. (*Id.* at 26:25).

Finding Mr. Heeter prone on the ground and handcuffed, paramedics observed in their incident report that Mr. Heeter had "no spontaneous respirations, a large blood clot stuck on his face . . . [p]upils fixed and dilated." (Columbus Fire Department Incident Report, ECF No. 25-7 at 1). Blood was observed to be flowing from multiple wounds. (*Id.*).

Mr. Heeter was pronounced dead at 10:57 a.m. on November 21, 2018, by Dr. Michelle Kincade at the Grant Medical Center Emergency Department. (Affidavit in Support of Search

Warrant, ECF No. 25-15 at 1; CPD Use of Force Report, ECF No. 25-16 at 1–2).

After an examination and autopsy was conducted on November 22, 2018, a Coroner's Report was prepared by the Franklin County Coroner's Office. (Coroner's Report, ECF No. 25-8). The findings included: (1) a gunshot wound of the chest (penetration of the right lung); (2) a gunshot wound of the right shoulder (penetration of soft tissues, fracture of right clavicle, right sided rib fractures); (3) a gunshot wound of the right forearm (penetration of soft tissues, fractures of the right radius and ulna); (4) a graze gunshot wound of the right flank; (5) multiple superficial punctate abrasions of the right side of the chest, abdomen, and the right arm; and (6) recent medical therapy (emergent bilateral thoracotomy). (*Id.*). The Coroner's Report determined the cause of death to be a gunshot wound of the chest and the manner of death to be a homicide. (*Id.*).

None of the officers' body camera footage shows Mr. Heeter pointing his gun towards the officers at any time. Defendant Bowers appears to be the only officer who fired his weapon. (Bruce Body Camera Footage at 11:33). None of the officers reported seeing Mr. Heeter holding a gun while they were in his home. Officer Bruce stated, "[p]rior to the shooting, I did not see Mr. Heeter's gun." (Robert Bruce Affidavit, ECF No. 21-6 ¶ 30). Officer Gibson stated, "I was scanning the table and did not see the gun." (Linda Gibson Affidavit, ECF No. 21-8 ¶ 10). Officer Stasheen was at the northeast corner of the residence and did not see a gun. (Informational Summary of Scott Stasheen, ECF No. 25-3 at 1). Officer Baldwin did not see the suspect with a gun. (Matthew Baldwin Informational Summary, ECF No. 25-2 at 2).

The "first time [Bowers] clearly saw Mr. Heeter's gun" was after he shot Mr. Heeter. Defendant Bowers then "saw [Mr. Heeter's] gun laying by his right leg." (Bowers Aff. ¶ 30). Neither the officer testimonies nor the body camera footage in the record show clearly whether the gun was on the table or in Mr. Heeter's pocket at the time he was shot.

**B.  Procedural Background**

On November 20, 2022, Karen Heeter, Mr. Heeter's wife and administrator of his estate, and the Heeters' children, Jonathan, Stephanie, and Brandon Heeter (collectively, "Plaintiffs"), filed the instant lawsuit against Defendants in the Franklin County Court of Common Pleas. (ECF No. 1-1). Defendants in this action are Officer Kenneth Bowers, in both his individual and official capacities, and the Columbus Police Department ("CPD"). (*Id.*). In this action, Plaintiffs alleged that "seven Officers and Defendant Bowers fired multiple shots at Mr. Heeter without cause and without adequate investigation," further failing to provide medical care to Mr. Heeter as he lay wounded for "roughly twenty minutes" afterward. (*Id.* at 2). Plaintiffs' Complaint asserts four claims for relief. Plaintiffs' first claim seeks damages under 42 U.S.C. § 1983 for Defendants' alleged violations of Mr. Heeter's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures without probable cause, the right to be free of and from the use of excessive force, and the right to adequate medical care while in custody. (*Id.* at 10–11). Plaintiffs' second, third, and fourth claims seek damages for Defendants' alleged commissions of the state-law torts of assault, battery, and wrongful death, respectively. (*Id.* at 11–12).

In addition to damages and costs, Plaintiffs' Complaint seeks two declaratory judgments. The first declaratory judgment would require Defendant CPD to mandate that all officers complete crisis intervention team trainings similar to those recommended by the National Alliance on Mental Illness of Franklin County, to keep and maintain records of such trainings in personnel files, and to require additional trainings as necessary. The second declaratory judgment would require Defendant CPD to operate its Mobile Crisis Response Unit on a 24-hour basis.

Defendants removed this action to the United States District Court for the Southern District Court of Ohio on December 18, 2020. (ECF No. 2).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Evidence that is "merely colorable" or "not significantly probative" will not defeat summary judgment. *Id*. at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion, as well as "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party satisfies its burden, then the burden of going forward shifts to the nonmoving party to produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

"The Court views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Even so, "[t]he mere existence of a scintilla of evidence to support [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).

### III. LAW AND ANALYSIS

Defendants seek summary judgment on all aspects of the Complaint. With respect to Plaintiffs' three claims arising under § 1983, Defendants argue that: (1) there is no evidence that Defendants violated Mr. Heeter's constitutional rights given that they had probable cause to enter his home, used deadly force justifiably against Mr. Heeter who was an apparent threat to himself and others, and were not deliberately indifferent to his consequential medical needs; (2) Defendant CPD cannot be held liable based on *Monell v. New York Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); and (3) Defendants are entitled to qualified immunity. Defendants further argue that they are entitled to presumptive immunity against Plaintiffs' state-law claims under the Ohio Political Subdivision Tort Liability Act, O.R.C. § 2744.01, *et seq*.

### A. Federal Claims

Plaintiffs brought suit under § 1983, which "by its terms does not create any substantive rights but rather 'merely provides remedies for deprivations of rights established elsewhere.'" *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). To prevail on their § 1983 claims, Plaintiffs "'must establish that a person acting under color of state law deprived [Mr. Heeter] of a right secured by the Constitution or laws of the United States.'" *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)).

Defendant Bowers argues that he is entitled to summary judgment on Plaintiffs' federal claims based on qualified immunity because his conduct was objectively reasonable under the circumstances. Qualified immunity doctrine generally protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis comprises two considerations: (1) "whether the facts alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established when the event occurred so that a reasonable officer would have known that his conduct violated it." *Crawford v. Tilley*, 15 F.4th 752, 762–63 (6th Cir. 2021). If the answer to these questions is "yes," qualified immunity is improper. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citations omitted).

An official "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 275 (6th Cir. 2020). To determine whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Klemencic v. Ohio State Univ.*, 111 F.3d 131 (6th Cir. 1997). It is not the case that for a right to be "clearly established," the specific action at issue must previously have been held unlawful, but "it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The analysis of whether a right is "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008). Ultimately, summary judgment should be denied if the undisputed facts, taken in the light most favorable to the plaintiff, show that the defendants violated clearly established rights or reveal a factual dispute "such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988); *see Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003) (stating that summary judgment on qualified immunity grounds is improper "if genuine

issues of material fact exist as to whether the officer committed acts that would violate a clearly established right").

Defendant CPD argues that it cannot be sued as a standalone entity because it is a division of the City of Columbus. Instead, Defendant CPD argues, both Plaintiffs' claims against Defendant Bowers in his official capacity and against Defendant CPD must be construed as claims against the City. On that basis, Defendant CPD contends, the claims against the City must fail because Plaintiffs' evidence does not support a *Monell* claim. This Court discusses Plaintiffs' federal claims against each Defendant in turn.

### 1. Defendant Bowers

Plaintiffs allege that Defendant Bowers violated Mr. Heeter's constitutional rights on three grounds. First, Plaintiffs contend that Defendant Bowers unlawfully entered Mr. Heeter's home without consent or probable cause in violation of the Fourth Amendment. Second, Plaintiffs argue that Defendant Bowers unjustifiably used deadly force against Mr. Heeter in violation of his Fourth Amendment right to be free from excessive force. Third, Plaintiffs maintain that Defendant Bowers failed to provide Mr. Heeter with timely medical attention after the shooting, constituting deliberate indifference in violation of his Fourteenth Amendment right to due process. In his motion for summary judgment, Defendant Bowers argues that he is entitled to qualified immunity rendering him non-liable for suit on any of Mr. Heeter's claims. This Court addresses these claims in order.

### a. Defendant Bowers's Entry into Mr. Heeter's Home

Plaintiffs allege that Defendant Bowers lacked probable cause to arrest Mr. Heeter. (ECF No. 1-1 at 8). The parties do not dispute the relevant facts, nor that Mr. Heeter was experiencing a mental health event. The parties do disagree, however, on whether Mr. Heeter was apparently a

danger to others. Plaintiffs assert that Defendant Bowers conceded that the purpose of the seizure was to intervene in a mental health event, and not to arrest Mr. Heeter. As such, according to Plaintiffs, "Defendants concede the entry was under exigent circumstances and the caretaker exception noted by lower courts." (ECF No. 25 at 28). Plaintiffs argue that this case is instead like *Caniglia v. Strom*, 141 S.Ct. 1596 (2021). In that case, Plaintiffs summarize, the detainee was suicidal and armed. *Id.* at 1598. The detainee's wife left the residence and contacted police for help. *Id.* Officers came in assuming that the detainee was a threat to himself and others and seized his weapons. *Id.* There, the Supreme Court held that the officers' entry and seizure violated the Fourth Amendment, declining to extend the community caretaker exception under exigent circumstances to entry without a warrant into the home. *Id.* at 1600.

Defendant Bowers contends that the circumstances present in this case constituted exigent circumstances justifying the officers' warrantless intrusion into the Heeter residence. Defendant Bowers likens the instant case to *Ziegler v. Aukerman*, 512 F.3d 777 (6th Cir. 2008). In that case, the Sixth Circuit found that an officer had probable cause to seize and return a patient who left a hospital after sharing suicidal plans to a healthcare professional. *Id.* at 783–84. Here, Defendant Bowers argues, he had probable cause to enter the Heeter residence because he reasonably believed that Mr. Heeter was a potential danger to others and in immediate need of aid.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and [that] no Warrants shall issue, but upon probable cause . . . . " U.S. Const. amend. IV. An officer's warrantless entry into an individual's home is presumptively unconstitutional. *Payton v. New York*, 445 U.S. 573, 587 (1980). A warrantless entry may be lawful nonetheless if exigent circumstances are present. *Hancock v. Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992). Such

circumstances exist "when a reasonable officer could believe that there are real immediate and serious consequences that would certainly occur were a police officer to postpone action to get a warrant." *Barton v. Martin*, 949 F.3d 938, 948 (6th Cir. 2020) (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). The Sixth Circuit has identified four situations which may give rise to exigent circumstances justifying a warrantless entry: (1) the hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; and (4) a risk of danger to the police or others. *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003). To justify warrantless entry based on exigent circumstances, the officer must have probable cause to enter the home. *United States v. Brown*, 449 F.3d 741, 745 (6th Cir. 2006). In sum, this Court must "consider the totality of the circumstances and the inherent necessities of the situation at the time" when determining whether exigent circumstances justified the warrantless entry and search or seizure. *Id.* (internal quotations omitted).

Viewing the facts in the light most favorable to Plaintiffs, on November 21, 2018, Franklin County 911 Dispatch received two calls from the Heeter residence requesting assistance with Mr. Heeter. (ECF No. 3 ¶¶ 9, 11). The first call, coming in at "roughly 9:00 AM," was from Karen Heeter, reporting that her husband had been making suicidal statements about jumping in front of a bus. (*Id.* ¶ 9). The second call, coming in at "roughly 9:58 AM," came from a relative of Mr. Heeter "alleging that Mr. Heeter was home, suicidal, not in his right mind, possibly in possession of a firearm, and in need of someone to talk to him or of a negotiator." (*Id.* ¶ 11). When the officers arrived, Karen Heeter "came to the front of the house and informed the officers that Mr. Heeter had threatened to kill himself, that he was inside the house with a gun, and that 'he'll put the gun down if you guys leave.'" (ECF No. 25 at 8). At least some of the officers were under the

impression that Mr. Heeter possessed a gun and intended to harm himself. (*See* Informational Summary of Scott Stasheen; *See* Informational Summary of Linda Gibson).

The instant case is not analogous to *Caniglia*, 141 S.Ct. 1596. Like this case, the officers in *Caniglia* performed a wellness check of the petitioner at his home pursuant to his wife's request. *Id.* at 1598. Unlike this case, however, the petitioner's wife in *Caniglia* was not present at the home when she called the police; further, her call concerned the petitioner's behavior the *previous* evening. *Id.* The petitioner there denied that he was suicidal, there was no evidence indicating that petitioner had a weapon on his person, and the police entered his home to seize his weapons after petitioner was taken to a hospital for a psychiatric evaluation. *Id.* Most importantly, in *Caniglia*, neither the Supreme Court nor the lower court considered whether exigent circumstances justifying the warrantless entry existed because "respondents had forfeited the point." *Id.* at 1599. The facts of *Caniglia* are not analogous because Mr. Heeter's family was *present* in the home while the situation unfolded, and Mr. Heeter was suspected of possessing a gun *while* exhibiting concerning behavior. Plaintiffs' argument misses the crucial point that the CPD officers did not come to the premises merely to evaluate Mr. Heeter's mental health. They were instead there because, *in the context of a mental health episode*, Mr. Heeter was suspected of being a threat to himself and others.

An officer must have probable cause to believe that the person seized poses a danger to himself or others, even in the context of a mental health seizure. *Ziegler*, 512 F.3d at 783. Here, given that "[a] showing of probable cause in the mental health seizure context requires only a probability or substantial chance of dangerous behavior," *id.*, this Court does not find the presence of a triable issue concerning whether such exigent circumstances existed. The existence of probable cause is even more apparent here than in *Ziegler*; there, the detainee was not in possession

of a weapon, had not made threats that could be interpreted to be directed to others, and "did not exhibit dangerous behavior" when taken into custody. *Id.* at 779–80, 784. Even in those circumstances, the Court found that the officer "had information such that a reasonable person in the officer's position would believe it probable that [the detainee] was a danger to herself or others." *Id.* at 784.

Here, Defendant Bowers concluded reasonably from his observations and from the concerns expressed by Mr. Heeter's family that Mr. Heeter posed a potential threat to himself and others. This is a situation creating an exigent circumstance justifying a warrantless search and seizure. *See Thacker*, 328 F.3d at 252 (holding that exigent circumstances justifying warrantless entry exist where the suspect poses "a risk of danger to the police or others."). Because Defendant Bowers had probable cause to enter Mr. Heeter's home, this Court **GRANTS** summary judgment on this claim.

### b. *Defendant Bowers's Use of Deadly Force Against Mr. Heeter*

Plaintiffs' next claim is that Defendant Bowers's use of deadly force against Mr. Heeter violated his Fourth Amendment right to be free from excessive force.

Defendant Bowers argues that he had probable cause to deploy deadly force against Mr. Heeter because he reasonably believed Mr. Heeter posed a serious and immediate threat of deadly harm to him and others. In support of his argument, Defendant Bowers points to the following factors indicating that his action was reasonable under the circumstances: Defendant Bowers's knowledge that Mr. Heeter said he could not be responsible for what would happen if the police came to his house; Defendant Bowers's knowledge that Mr. Heeter had a gun on or near his person; Defendant Bowers's knowledge that at least three children were in the house; Mr. Heeter's close proximity to Defendant Bowers and other officers at the time of the shooting; Mr. Heeter's failure

to comply with orders to show his hands and put down the gun which some officers suspected he had on his person; Mr. Heeter's agitated demeanor and threatening comments such as "you guys are really starting to piss me off"; and Mr. Heeter's rapid movement towards the table just before being shot. Defendant Bowers acknowledges that he did not see Mr. Heeter's gun until after shooting him but argues that record evidence shows that he believed reasonably that Mr. Heeter pulled a gun from his pocket. Defendant Bowers asserts that whether Mr. Heeter was undergoing a mental health crisis does not restrict the officer's ability to use deadly force in such instances. At oral argument, Defendant Bowers argued that the Sixth Circuit held the use of deadly force to be reasonable in the following analogous cases: *Cooper v. City of Columbus, Ohio*, No. 22-3251, 2023 WL 1434055 (6th Cir. Feb. 1, 2023); *Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015); and *Lemmon v. City of Akron, Ohio,* 768 F. App'x 410 (6th Cir. 2019). Defendant Bowers thus maintains that the holdings in these cases provide precedent necessitating that this Court find his use of deadly force reasonable here. At any rate, Defendant Bowers contends, Plaintiffs failed to demonstrate that *clearly established* law put him on notice that use of deadly force in this circumstance constituted a Fourth Amendment violation.

Plaintiffs contend that there are several genuine issues of material fact which bear on whether Defendant Bowers had probable cause to use excessive force, thus making summary judgment inappropriate. The first critical dispute is whether the gun was in Mr. Heeter's pocket or on the table; the second is whether Mr. Heeter's behavior was threatening or combative. The resolution of these disputed issues is critical to determining whether it was objectively reasonable for Defendant Bowers to believe that Mr. Heeter posed "an immediate threat to the safety of the officers or others." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009). Although Defendant Bowers characterizes Mr. Heeter's movement before being shot as having

"lunged" forward, Plaintiffs argue that Officers Gibson and Redding describe in their affidavits some smaller degree of movement. According to Plaintiffs, Officer Bruce's body camera footage only shows a slight movement. Plaintiffs argue that the coroner's report supports a potential jury finding that the presence of shrapnel in Mr. Heeter's chest and upper abdomen contradicts Defendant Bowers's account that Mr. Heeter was reaching for a gun from his pocket. Likewise, Plaintiffs argue, Defendant Bowers provided inconsistent statements concerning whether he believed that Mr. Heeter was pulling a weapon from his jacket or his jeans. Instead, argue Plaintiffs, a reasonable jury could find that Mr. Heeter was merely a non-threatening, average-sized, middle-aged man who was merely experiencing a mental health crisis when he was surrounded by CPD officers and unreasonably shot to death.

When analyzing such claims, this Court applies the Fourth Amendment's unreasonable seizure jurisprudence. *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). Whether an officer has exerted excessive force during a seizure is an inquiry determined under an "objective reasonableness" standard. *Morrison*, 583 F.3d at 401. Determining whether the officer's actions at issue were "objectively reasonable" is a "fact-specific inquiry based on the totality of the circumstances" that considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (internal quotations omitted). The reviewing court must judge the lawfulness of the officer's conduct "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Such considerations should also include "analysis of both the moments before the shots were fired and the prior interactions between [the suspect] and [the officer]." *Latits v. Phillips*, 878 F.3d 541, 548 (6th Cir. 2017).

Defendant Bowers is not entitled to summary judgment on Mr. Heeter's excessive force claim because there are disputed facts which color whether Officer Bower's use of deadly force was "objectively reasonable." *See Morrison,* 583 F.3d at 401. Considering that this is a "fact-specific inquiry based on the totality of the circumstances," *Id.*, there is evidence from which a reasonable jury could find that Defendant Bowers lacked probable cause for his use of deadly force against Mr. Heeter. In particular, the disputed issues are relevant to the inquiry as to whether Defendant Bowers reasonably perceived that Mr. Heeter "pose[d] an immediate threat to the safety of the officers or others." *Id.*

Although Defendant Bowers alleges that Mr. Heeter "lunged" in the direction of the officers and appeared to have a grip on a weapon before Defendant Bowers shot him, the video evidence suggests that Mr. Heeter only leaned slightly forward with nothing in his hand. (*See* Bruce Body Camera Footage at 11:30–11:32). Plaintiffs also present evidence that the other six officers did not shoot, one did not have a firearm, and several did not even have their weapons drawn; this consideration is also relevant to the determination of whether Defendant Bowers's conduct was lawful "from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. A reasonable jury could credit Plaintiffs' account describing Mr. Heeter as a non-threatening, weaponless man experiencing a mental health episode who merely leaned forward before being shot and find that Defendant Bowers's use of deadly force constituted excessive force. As such, this Court finds that there is evidence that Defendant Bowers violated Mr. Heeter's Fourth Amendment right to be free from excessive force.

Defendants' reliance on *Cooper*, *Pollard*, and *Lemmon* as factually analogous cases to which this Court should defer is misplaced. This is because, put plainly, all these cases have significant factual differences from the case *sub judice*.

17

In *Cooper*, the decedent and the police officer "briefly and chaotically wrestled . . . over access to a handgun in the backseat of a car" before the officer opened fire. 2023 WL 1434055, at *1. *Cooper* concerned a traffic stop that became fatal. The Court's conclusion that the officer's use of excessive force was reasonable hinged upon several key observations supported by the evidence. The decedent failed to follow the officers' numerous commands to keep his hands visible and instead made furtive movements in the dark backseat of his car. *Id.* at *6. The decedent then reached for the right pocket of his pants, in which one of the officers *observed a gun*. *Id.* The observing officer yelled to the non-observing officer that the decedent had a gun on his person. *Id.* The decedent then engaged in "a quickly escalating physical interaction" with the non-observing officer before the non-observing officer shot him. *Id.* Lastly, this struggle occurred in "close proximity" in "the small confines of the backseat," facts which the Court noted would reasonably compound an officer's threat perception. *Id.* Mr. Heeter, on the other hand, maintained a still presence within the confines of own home—a much larger and less chaotic environment than the vehicle's backseat in *Cooper*. Further, no officer could identify positively where Heeter's weapon was. *Cooper* is not factually analogous.

In *Pollard*, the Court found the use of deadly force reasonable in the following circumstances:

> [A] rape suspect led Columbus, Ohio police officers on a highway car chase before crossing the median, accelerating the wrong way, and ramming head on into a semitrailer. Officers surrounded the suspect's car and fatally shot the suspect after he reached down into the car, despite police commands to "show his hands," and then clasped his hands into a shooting posture, pointing them at the officers.

780 F.3d at 399.

Specifically, the decedent was a suspect in several rapes, and a warrant had been issued for his arrest on charges including forcible rape, assault with a deadly weapon, burglary, and

kidnapping. *Id*. at 399. The Court found that the officers had probable cause to believe that the decedent threatened their safety given the officers' observations of the following: (1) decedent was wanted on serious rape charges and was potentially armed; (2) decedent appeared determined to avoid arrest by any means, as evidenced by attempt to evade capture via a high speed chase; and (3) after his vehicle was disabled, decedent made sudden movements and gestures suggestive of having a weapon and continued to make these gestures after repeated warnings from the officers. *Id.* at 403. Mr. Heeter was not suspected of having committed a serious or violent crime. He did not make gestures of a threatening nature toward the officers. *Pollard* is not factually analogous.

Finally, this Court arrives at *Lemmon*. In *Lemmon*, the Court found the use of deadly force reasonable where the evidence showed that the decedent was a suspect in an armed robbery and suspected consequently to be armed before his fatal standoff with police. 768 F. App'x at 418. A police officer spotted the decedent holding "something" on his side at the time that he suddenly dropped the bike he was riding and started toward the officer. *Id.* During this exchange, the Court found, the decedent also "dar[ed] officers to shoot him." *Id.* at 417. In short, the *Lemmon* Court found in favor of the officers where "officers were faced with a split-second threat of bodily harm by defiant felony suspects who gestured that they had a weapon." *Id.* at 418. The Court explicitly noted as an underpinning of its holding that the use of deadly force was reasonable "*because* [the suspect's] crimes were severe under Ohio law." *Id*. at 415 (emphasis added). Mr. Heeter was not suspected of a violent crime when officers confronted him. Acknowledging Mr. Heeter's statement expressing annoyance at the officers, this Court notes that no evidence shows that Mr. Heeter made comments of the escalatory nature that the decedent in *Lemmon* asserted. To the contrary, the evidence demonstrated that Mr. Heeter advised the officers that he would put his weapon away if they left his home. *Lemmon* is not factually analogous.

Having concluded that there was a constitutional violation, this Court next considers the second step of the qualified immunity analysis—whether, as of November 21, 2018, Mr. Heeter's constitutional right to be free from excessive force under these circumstances was clearly established. *See Sample v. Bailey,* 409 F.3d 689, 698 (6th Cir. 2005). This Court finds that it was.

The Supreme Court has held that "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Even though the undisputed evidence indicates that Defendant Bowers suspected that Mr. Heeter had a weapon on his person, it is clearly established that merely suspecting that a suspect has a weapon, even if he indeed does, "without more, is insufficient to justify the use of deadly force." *Campbell v. Cheatham Cnty. Sheriff's Dep't*, 47 F.4th 468, 482 (6th Cir. 2022); *see Floyd v. City of Detroit*, 518 F.3d 398, 408 (6th Cir. 2008) ("The bare assertion that [an officer] allegedly formed an honest but mistaken belief thus does little to resolve the key issue of whether his belief and subsequent actions were nonetheless objectively unreasonable."). Instead, the officer must hold an additional and objectively reasonable suspicion that the suspect poses a danger of serious physical harm to him or others. *See Campbell*, 47 F.4th at 481–82. (collecting cases); *See King v. Taylor,* 694 F.3d 650, 664 (6th Cir. 2012) (stating that "[i]t has been clearly established in this circuit for some time that "individuals have a right not to be shot unless they are perceived as posing a threat to officers or others."). Although Defendant Bowers alleged that Mr. Heeter's statements could be perceived as threatening, a reasonable jury could find that they were not. At the time that Defendant Bowers shot Mr. Heeter, Mr. Heeter was surrounded by seven police officers, appeared to be unresponsive to the officers, and had just taken

what appears to be a small lean forward. Indeed, body camera footage and officers' testimony support the facts as Plaintiffs interpret them.

This Court thus finds a reasonable jury could conclude that Defendant Bowers's alleged perception that Mr. Heeter posed a threat of serious harm was objectively unreasonable. The jury could credit Plaintiffs' view of the evidence suggesting that Mr. Heeter was not reaching for the gun when Defendant Bowers shot him and that no other officers found it necessary to train a lethal weapon on him. (*See* Bruce Body Camera Footage at 11:00–11:33). If the jury credits Plaintiffs' view, Defendant Bowers shot Mr. Heeter despite having no reasonable basis for perceiving him as a threat. There is, accordingly, sufficient evidence from which to find that Mr. Heeter's clearly established Fourth Amendment constitutional rights were violated. As such, Defendant Bowers is not entitled to qualified immunity on Plaintiffs' federal claim of excessive force as a matter of law, and his motion for summary judgment on that ground is **DENIED**.

### c. *Defendant Bowers's Medical Treatment of Mr. Heeter After the Shooting*

Plaintiffs next allege that Defendant Bowers failed to provide Mr. Heeter with adequate medical care while awaiting the paramedics in violation of his rights under Fourteenth Amendment's Due Process clause.

Defendant Bowers bases his summary judgment motion on the argument that Plaintiffs fail to demonstrate that Defendant Bowers disregarded the substantial risk of serious harm that Mr. Heeter's injury posed to his health and safety. Defendant Bowers argues that he did not disregard Mr. Heeter's injury given that paramedics were summoned with 30 seconds of the shooting and began attending to him within 8.5 minutes of the shooting. (ECF No. 21 at 29) (citing Sergeant Redding's Body Camera Footage at 11:12, 11:37, 19:40, ECF No. 21-12). Defendant Bowers attested to hearing Sergeant Redding air for a medic and seeing the medics arrive at the scene. (*Id.*

(citing Bowers Aff. ¶¶ 27-28)). Further, Defendant Bowers argued, basic first aid would have been futile given the severity of Mr. Heeter's injuries. (*Id.*) (citing Redding Aff. ¶ 20)). Defendant Bowers contends that he cannot have been deliberately indifferent given that the officers acted promptly in summoning aid; he was not required to exhaust every medical option. (*Id.*) (citing *Thomas v. Columbus,* 854 F.3d 361, 367 (6th Cir. 2017); *Stevens-Rucker v. City of Columbus*, 739 Fed. App'x 834, 846 (6th Cir. 2018)).

Plaintiffs argue that officers must do more than summon medical help and instead "personally provide first aid when they become aware that a person in their custody has a serious medical need that requires attention." (ECF No. 25 at 24) (citing *Pierce v. Springfield Twp., Ohio*, No. 1:11-CV-847, 2013 WL 12099085, at *8 (S.D. Ohio May 21, 2013), *aff'd,* 562 F. App'x 431 (6th Cir. 2014)). Plaintiffs argue that whether Defendants' assertion was reasonable that "basic first aid would have been futile" is a genuine issue of material fact rendering summary judgment inappropriate. According to Plaintiffs, a reasonable jury could find that the officers were deliberately indifferent by failing to render medical assistance to Mr. Heeter for the "10 minutes" that elapsed between the shooting and the paramedics initiating treatment.

The Fourteenth Amendment entitles pretrial detainees to a right to medical treatment that is analogous to the right of prisoners under the Eighth Amendment. *Jackson v. Wilkins*, 517 F. App'x 311, 317 (6th Cir. 2013) (citing *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012)). To prove that Mr. Heeter was deprived of that right, Plaintiffs must demonstrate that Defendant Bowers acted with "deliberate indifference to serious medical needs." *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (internal quotations omitted).

A constitutional deliberate indifference claim consists of both an objective and a subjective component. *Id.* at 367–68. To demonstrate the existence of the objective component, Plaintiffs

must show that their claims "arise from an injury or illness so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* at 368 (internal quotations omitted). The subjective component requires Plaintiffs to demonstrate that: (1) "the official being sued subjectively perceived facts from which to infer a substantial risk to the [detainee]," (2) the official "did in fact draw the inference," and (3) the official "then disregarded that risk." *Richko v. Wayne Cnty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016) (internal quotations omitted).

This Court **DENIES** summary judgment on Plaintiffs' deliberate indifference claim. A reasonable jury could find that Defendant Bowers was deliberately indifferent to Mr. Heeter's serious medical needs by failing to provide any basic first aid—or removing his handcuffs—in the time between shooting him and the arrival of the medics. Although Plaintiffs assert that 10 minutes elapsed between the shooting and the paramedics' arrival, video evidence shows that it was approximately 8.5 minutes. (*See* Bruce Body Camera Footage at 11:33–20:05). Defendant Bowers does not dispute that the officers failed to provide first aid to Mr. Heeter while they awaited the paramedics. Defendants argue, however, that they were not required to do anything beyond calling promptly for medical attention and refraining from delaying the paramedics.

To be sure, the Sixth Circuit has held that, "[w]hen police injure a person while apprehending him, they generally satisfy the Fourteenth Amendment by summoning medical care and not intentionally or recklessly delaying his access to it." *Hicks v. Scott*, 958 F.3d 421, 439 (6th Cir. 2020). Some Sixth Circuit decisions, however, indicate that officers do not always free themselves of liability for merely calling the paramedics, even when they summon the paramedics promptly and do not cause the paramedics delay in reaching the suspect. *See, e.g., Scozzari v. Miedzianowski*, 454 F. App'x 455, 466 (6th Cir. 2012) (holding that, although the officers promptly arranged for medical care for an injured detainee, "[r]easonable officers would have known, based

on this Circuit's precedent, that the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance[.]"). For example, the Sixth Circuit characterized their previous decision in *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005), as denying summary judgment on the issue of deliberate indifference where the Court found that "police allegedly beat a suspect after he had been subdued, then failed to give him medical attention while he lay in extremis." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 543 (6th Cir. 2008). Although the defendant officers in that case summoned medical care, the Court found that a triable issue remained on whether "the police violated the victim's Fourth Amendment right to medical care while in custody." *Id.* (citing *Estate of Owensby*, 414 F.3d at 603).

Other district courts in this circuit have declined to dismiss deliberate indifference claims in instances where officers failed to provide basic first aid care to a seriously wounded suspect, even where officers acted promptly to summon medical personnel. *See, e.g., Eibel v. Melton,* 904 F. Supp. 2d 785, 807 (M.D. Tenn. 2012) (finding a triable issue on deliberate indifference where the officers summoned medical help but failed "even to place pressure on the wound" of a handcuffed suspect who they shot); *Winston v. City of Cleveland*, No. 1:14 CV 2670, 2016 WL 397972, at *3 (N.D. Ohio Feb. 2, 2016) (finding that the plaintiffs sufficiently alleged a plausible claim for relief where officers shot decedent in the stomach and "stood around" for a minute and a half while he lay on the ground until other officers arrived on the scene within four minutes to administer care and EMS arrived within twelve minutes after the shooting).

Here, the evidence shows that Defendant Bowers shot Mr. Heeter, after which he was handcuffed and left face down on the ground in a growing puddle of blood without receiving any further attention until paramedics arrived 8.5 minutes later. (*See* Bruce Body Camera Footage at

11:33–20:05). Although this case is not exactly like *Jones v. City of Cincinnati*—in which the Sixth Circuit found deliberate indifference—given that the officers here at least called promptly for medical assistance, the officers in both cases knowingly left a mortally-wounded suspect lying face down on the ground while handcuffed without administering aid during the critical moments following injury. 521 F.3d 555, 560 (6th Cir. 2008). Even worse, Defendant Bowers testified that the six-month basic training required by CPD for new recruits trained him in, among other topics, "basic first aid." (Bowers Aff. ¶ 39). Plaintiffs thus raise a triable issue upon which a reasonable jury could find that the officers were deliberately indifferent to Mr. Heeter's serious medical needs.

Further, the law was "clearly established" on November 21, 2018, that the Fourteenth Amendment afforded Mr. Heeter the right to receive first aid treatment while awaiting paramedics, given his severe injury that was caused by Defendant Bowers. The Sixth Circuit has "explicitly held that a pretrial detainee's right to medical treatment for a serious medical need has been established since at least 1987." *Preyor v. City of Ferndale*, 248 F. App'x 636, 645 (6th Cir. 2007). An arrestee's right to medical care is not "any less clearly established than the right of other pretrial detainees." *Estate of Owensby*, 414 F.3d at 604. As the Court mentioned, there are some instances in which "the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance." *Scozzari*, 454 F. App'x at 466. This is one of them.

Although Plaintiffs do not identify qualifying precedent holding the specific action at issue to be unlawful, there are some novel factual instances in which officials such as Defendant Bowers may still be on notice that their conduct violates clearly established law. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see Anderson*, 483 U.S. at 640 (explaining that a right can still be "clearly established" if, "in the light of pre-existing law the unlawfulness [is] apparent."). Here, Defendant Bowers shot a middle-aged man five times and then left him lying handcuffed and face down in a

pool of blood for 8.5 minutes without providing first aid. This Court finds that the state of the law as of November 21, 2018, gave Defendant Bowers "fair warning" that his alleged treatment of Mr. Heeter was unconstitutional. As such, this Court **DENIES** summary judgment on this issue.

### 2. Defendant Columbus Police Department

Plaintiffs also bring § 1983 claims against Defendant CPD as "a unit of local government and law enforcement organized under the laws of the State of Ohio." (ECF No. 3 ¶ 7). The CPD, however, cannot be sued as a separate entity because it is a division of the City of Columbus. *See Johari v. City of Columbus Police Dep't,* 186 F. Supp. 2d 821, 825 (S.D. Ohio 2002) (Marbley, J.) (explaining that the CPD is not *sui juris* but construing the merits of the *pro se* plaintiff's Complaint as if it had instead named the City of Columbus as a defendant). Consequently, this Court treats Plaintiffs' claims against the CPD and Defendant Bowers in his official capacity as a suit against the City of Columbus (the "City"). *See Brandon v. Holt*, 469 U.S. 646, 471–72 (1985) (holding that a judgment against a municipal public servant in his official capacity clearly equates to a judgment against the city itself). To avoid confusion, however, this Court will continue to refer to this Defendant as the "CPD."

Defendants argue that Plaintiffs failed to demonstrate municipal liability under any *Monell* theory. First, Defendants argue, Plaintiffs fail to show the existence of an improper or illegal municipal policy. Instead, Defendants contend, Columbus Police Division Directive 2.01 entitled "Use of Force" ("Directive 2.01") tracks Supreme Court precedent regarding use of force. (*See* Directive 2.01, ECF No. 21-4). Second, Defendants argue that Plaintiffs never demonstrate that a decisionmaker ordered or provided approval of the allegedly unconstitutional conduct. Third, Defendants contend, Plaintiffs cannot show "a policy of inadequate training or supervision" because they fail to identify any deficiencies in relevant CPD training or any behavioral incident

that were not investigated thoroughly. Defendants assert that the record shows that even the Heeter shooting was investigated thoroughly by the CPD Critical Incidence Response Team, the Franklin County Prosecutor's Office, and the City. Fourth, Defendants argue, Plaintiffs never demonstrated that the City has a custom of tolerance or acquiescence of constitutional violations, showing no other examples of the City failing to address such violations. Defendants contend that Plaintiffs' reliance on the City's response to Defendant Bowers's use of deadly force in 2004 is misplaced because this incident was investigated fully.

Plaintiffs first argue that Defendant CPD is liable under *Monell*'s second theory for failure to train or supervise. Plaintiffs assert that the City's settlement of a civil action arising from Defendant Bowers's previous killing of an unarmed man in 2004 contemplates liability and as such constitutes a prior unconstitutional use of force for which Defendant Bowers was never disciplined. That incident, Plaintiffs argue, paired with the Heeter shooting, indicates that Defendant CPD has routinely failed to investigate properly Defendant Bowers's unlawful behavior and then obscured his misconduct through settlement. Plaintiffs also claim, under *Monell*'s fourth theory, that the City failed to investigate and discipline Defendant Bowers for previous infractions including the Heeter shooting, demonstrating that Defendant CPD held an official policy or custom of deliberate indifference. Plaintiffs argue that Defendant CPD was aware that Defendant Bowers's shooting violated CPD Directive 2.01 and CPD Directive 3.05 covering interactions with a person in a mental health crisis. Plaintiffs also contend that Defendant CPD knowingly declined to discipline Defendant Bowers for various infractions throughout his employment, causing his continued disregard of department policies. Plaintiffs reference several of Defendant Bowers's performance evaluations (*see* Bowers Performance Evaluation, ECF No. 25-18), including two write-ups for directing expletives at civilians (*see* Disciplinary Action Report, ECF No. 25-19; *see*

Response to Civilian Complaint, ECF No. 25-20). In each instance, supervising officers found that progressive discipline against Defendant Bowers was not warranted. (*Id.*; ECF No. 25 at 33). Plaintiffs reason that their evidence demonstrates that a reasonable jury could find that Defendant CPD's lack of oversight constituted deliberate indifference to the rights of citizens, encouraging a toxic culture that ultimately caused Heeter's death.

Section 1983 creates a civil cause of action for deprivation of federal rights by any person acting under color of law; but it does not establish full *respondeat superior* liability for actions of municipal employees. *Monell*, 436 U.S. at 690–91. Rather, the employee's action must "fairly be said to represent official policy" of the local government. *Id.* at 694. To prevail on a § 1983 claim, an aggrieved party first must have suffered a constitutional injury. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Municipal liability for such injuries may attach in any of four ways. "[T]he plaintiff may prove: '(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). Whichever of the four routes is taken, "a plaintiff must demonstrate a close causal connection between the policy and the injuries suffered as well." *Johnson v. Hardin Cty.*, 908 F.2d 1280, 1285 (6th Cir. 1990). In other words, "the municipal action [must be] the moving force behind the injury of which the plaintiff complains." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).

Plaintiffs' *Monell* claim must be dismissed. In support of their *Monell* theories, Plaintiffs offer only the following evidence: (1) citations to two CPD policies which Defendant Bowers allegedly violated in the Heeter shooting; (2) accounts from various officers concerning the Heeter

shooting; and (3) citations to two internal write-ups received by Defendant Bowers and the resulting investigations, as well as references to Defendant Bowers's 2004 use of deadly force for which they provide no investigative record. But Plaintiffs have identified no "illegal official policy or legislative enactment" that would give rise to municipal liability, nor "an official with final decision-making authority [who] ratified illegal actions." *See Jackson*, 925 F.3d at 828. Plaintiffs instead argue that the evidence shows the existence of a genuine issue of material fact concerning whether Defendant CPD had a "policy of inadequate training or supervision" or engaged in "a custom of or acquiescence of federal rights violations" via its failure to investigate and discipline. *Id.* Success on either theory would render summary judgment improper on Plaintiffs' *Monell* theories of liability; however, Plaintiffs fail to provide evidence to prove either.

### a. Failure to supervise/train

To succeed on an inadequate training claim, Plaintiffs must prove: "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the City's deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016) (internal quotation omitted). In other terms, Plaintiffs must "identify a deficiency in the training program and show that the specific deficiency actually *caused* a constitutional violation." *Shepherd v. City of Columbus*, No. 04-CV-302, 2006 WL 840386, at *8 (S.D. Ohio Mar. 30, 2006) (Marbley, J.) (citing *Bd. of Cty. Comm'rs*, 520 U.S. at 407).

Plaintiffs have failed to demonstrate that Defendant CPD failed to supervise or train its police officers. Plaintiffs never identified any deficiencies in CPD training. Plaintiffs' characterization of Defendant CPD's settling of its civil lawsuit as indicative of liability is conclusory; the lawsuit was dismissed before a factfinder could determine whether Defendant

Bowers committed a constitutional violation. Defendants, on the other hand, submitted testimony that Defendant CPD provides a six-month training academy that covers "a wide range of law-enforcement topics", including proper uses of lethal and non-lethal force, basic first aid, searches and seizures, and de-escalation. (Bowers Aff. ¶ 39). Defendant Bowers also testified that he participated in a Field Training program, working with and observing an experienced officer before receiving his initial assignments. (*Id.* ¶ 41). In addition to the basic training and observation period, Defendant Bowers testified that he received training on interacting with persons experiencing a mental health crisis as well as regular in-service training on pertinent policing issues. (*Id.* ¶¶ 40, 42). This Court finds that Plaintiffs' claim fails because the record is devoid of evidence of a "pattern of similar constitutional violations by untrained employees" that "is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

### b. Failure to investigate/discipline

Plaintiffs next argue that Defendant CPD failed to investigate or discipline Defendant Bowers. Because municipal liability requires an unconstitutional "policy" or "custom", an allegation of a single failure to investigate a single plaintiff's claim does not suffice. *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020). The plaintiff must instead demonstrate that there were "multiple earlier inadequate investigations and they must concern comparable claims." *Id.* Similarly, with respect to failure to discipline claims, the plaintiff must make out "a showing of a history of widespread abuse that has been ignored by the City." *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

In support of their failure to investigate and discipline claim, Plaintiffs presented only evidence of two instances in which Defendant Bowers used expletives toward civilians (*see*

Disciplinary Action Report, ECF No. 25-19; *see* Response to Civilian Complaint, ECF No. 25-20), a civil complaint stemming from Defendant Bowers's previous alleged use of deadly force (Civil Complaint, ECF No. 25-14), and evidence concerning the instant incident. Plaintiffs acknowledge that Defendant Bowers's uses of expletives were investigated. (ECF No. 25 at 33–34). Plaintiffs did not offer evidence showing that Defendant CPD or the City improperly investigated or disciplined Defendant Bowers for the 2004 incident. The record also contains testimony that Defendant Bowers's use of deadly force against Mr. Heeter was investigated by Defendant CPD's Critical Incident Response Team and the Franklin County Prosecutor's Office. (Bowers Aff. ¶ 46)

The most that Plaintiffs could establish with such evidence is that the parties investigating Defendant Bowers in each instance reached the *wrong* conclusion; but even this would fail to demonstrate the deliberate indifference necessary to show an unlawful policy or custom for purposes of § 1983. *See Shepherd,* 2006 WL 840386, at *7 (finding that plaintiff failed to demonstrate a failure to investigate where the record revealed a thorough investigation into plaintiff's arrest culminating in the police sergeant's conclusion that the defendant officers' actions had been appropriate under the circumstances.). Plaintiffs' proffered evidence of a handful of unrelated incidents committed by a single officer falls far short of making a showing that the city failed to discipline its offers to such a degree that it "evidences a 'deliberate indifference' . . . properly thought of as a city 'policy or custom' that is actionable under § 1983." *Young v. City of Columbus*, No. 2:04-CV-673, 2007 WL 107777, at *7 (S.D. Ohio Jan. 9, 2007) (Marbley, J.) (quoting *Berry*, 25 F.3d at 1354).

For these reasons, this Court **GRANTS** summary judgment to Defendant CPD as to the issue of *Monell* liability.

## B.  State-Law Claims: Assault, Battery, and Wrongful Death

Plaintiffs also bring Ohio tort claims against both Defendant Bowers and Defendant CPD for assault, battery, and wrongful death. Under the Ohio Political Subdivision Tort Act, O.R.C. § 2744, municipal employees are immune from liability for such claims unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

O.R.C. § 2744.03(A)(6).

In defining the relevant terms as used in O.R.C. § 2744.03(A)(6), the Ohio Supreme Court held that "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 388, 2012-Ohio-5711, 983 N.E.2d 266, ¶ 33. The Court also defined "wanton misconduct" as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* In instances where federal qualified immunity and Ohio state law immunity rest on the same issues of material fact, this Court "may review the state-law immunity defense 'through the lens of federal qualified immunity analysis." *Hopper v. Plummer*, 887 F.3d 744, 759 (6th Cir. 2018).

Defendants argue that they are immune from suit on the state-law claims because "Defendant Bowers acted lawfully and reasonably during the incident" such that he is entitled to

immunity under O.R.C. § 2744.03(A)(6). Plaintiffs disagree, contending that Defendant Bowers acted in a "wanton or reckless manner" when he entered Mr. Heeter's home without his consent or probable cause, shot him, and then failed to render the appropriate medical assistance.

This Court finds that a reasonable jury could conclude that Defendant Bowers's conduct in the Heeter incident falls within the O.R.C. § 2744.03(A)(6)(b) exception for "wanton or reckless" behavior. After all, this Court found that a reasonable jury could find that Defendant Bowers's conduct constituted excessive force and deliberate indifference in violation of Mr. Heeter's Fourth Amendment and Fourteenth Amendment rights, respectively. *See supra* Section III.A.1.b, c. The same facts that support this Court's finding with respect to Plaintiffs' § 1983 claims warrant its denial of summary judgment on Defendants' claims of state-law immunity under O.R.C. § 2744.03(A)(6).

There is ample precedent for such a finding. The Sixth Circuit has recognized that there are similarities between the Eighth Amendment's "deliberate indifference" standard and the O.R.C. § 2744.03(A)(6)(b) "wanton or reckless" standard. *Hopper*, 887 F.3d at 759. The Court has also recognized that the same facts which support a finding of excessive force could likewise support a finding that the officer acted in a "wanton or reckless" manner within the meaning of O.R.C. § 2744.03(A)(6)(b). *See, e.g., Redrick v. City of Akron,* 2021 WL 5298538, at *5 (6th Cir. Nov. 15, 2021) (holding that "a jury could find that [Defendant] acted in a wanton or reckless manner or with malicious purpose" for "the same reasons and disputed facts relevant to [plaintiff's] § 1983 claim" that the defendant's shooting of the plaintiff was "objectively unreasonable."); *Martin v. City of Broadview Heights*, 712 F.3d 951, 963 (6th Cir. 2013) (holding that "[a]s resolution of the [Ohio] state-law immunity issue is heavily dependent on the same disputed material facts as the excessive force determination under § 1983, the district court properly denied

summary judgment to the officers on the estate's state-law claims."); *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011) (holding that the district court did not err in denying Ohio state-law immunity because there "the resolution of the recklessness issue [was] heavily dependent upon the same disputed material facts as the probable cause analysis" it used to find a triable issue on Plaintiffs' § 1983 excessive force claim.). This is such a case.

This Court concludes that the disputed facts could lead a reasonable jury to believe that Defendant Bowers acted in a wanton or reckless manner by using more force than was necessary to neutralize Mr. Heeter and failing to address his apparent and serious medical needs afterward. This Court therefore **DENIES** Defendants' motion for summary judgment on the state law claims.

## IV.    CONCLUSION

For the reasons stated above, this Court **GRANTS** in part **AND DENIES** in part Defendants' Motion for Summary Judgment (ECF No. 21). Specifically, this Court **GRANTS** Defendants' Motion with respect to Plaintiffs' unreasonable search and seizure claim against Defendant Bowers and their claim for § 1983 municipal liability against Defendant CPD. This Court **DENIES** Defendants' Motion for summary judgment on Plaintiffs' excessive force and deliberate inference claims against Defendant Bowers as well as the state law claims against both Defendants.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 28, 2023**

34