IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KAREN HEETER,** *et al.,* | : | |
| Plaintiffs, | : | Case No. 2:20-cv-6481 |
| v. | : | Judge Algenon L. Marbley |
| **KENNETH BOWERS,** *et al.,* | : | Magistrate Judge Elizabeth P. Deavers |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before this Court on two Rule 45 subpoenas, issued by Plaintiff's counsel less than four weeks before trial. The first, directed at OhioHealth, requested electronic production of "Medical Records of Billy Heeter . . . for all care received on November 21, 2018" (hereinafter, "Medical Subpoena"). The second, directed at the Franklin County Prosecutor's Office ("FCPO"), asked for the "Transcripts of the Grand Jury proceedings of 09/11/2019, case # 511-9098" (hereinafter, "Grand Jury Subpoena"). The deadline to respond to both subpoenas was February 10, 2025, between 11 a.m. and 1 p.m. Defendant Kenneth Bowers, through counsel, objected to the subpoenas and requested a status conference. On February 7, 2025, this Court convened a hearing and overruled Defendant's objections.

On February 11, 2025, the day after the documents were due, counsel for the FCPO emailed court staff with its own written objections to the Grand Jury Subpoena. The next day, on February 12, 2025, FCPO's counsel notified this Court that the Franklin County Court of Common Pleas, which had been adjudicating Plaintiff's motion for disclosure of the grand jury transcripts over the past several months, had denied Plaintiff's request.

1

For the reasons stated below, this Court concludes that the state court decision does not have preclusive effect on this Court's oral rulings from the February 7, 2025, conference. The FCPO's written objections are also overruled, and the FCPO's request for a status conference is denied as well. The FCPO is **ORDERED** to comply with the Grand Jury Subpoena and disclose the requested grand jury transcripts to Plaintiff forthwith.

### I. BACKGROUND

This is an excessive force action brought under 42 U.S.C. § 1983 against a police officer who, in response to a 911 call about a possible suicide attempt, shot five rounds and killed the man who was threatening suicide. The facts surrounding the shooting are hotly contested. But we do know a few things. First, it is undisputed that the deceased—Billy Heeter—was in possession of a firearm at the time the 911 call was made. Second, we know that Officer Bowers fired five shots into Mr. Heeter's chest, and that Mr. Heeter was pronounced dead at the hospital approximately 40 minutes later. We also know that, based on Plaintiff's uncontroverted representation, Defendant Bowers—along with other officers on the scene—testified before the grand jury about what happened on that fateful day in November 2018.

What we do not know, however, and what the jury will be asked to determine in less than two weeks, is whether a reasonable officer in Officer Bowers' place would have perceived Mr. Heeter to pose a deadly threat. Both parties agree that this will come down to where Mr. Heeter's gun was located at the time of the shooting. One affidavit in support of a search warrant, signed under oath by officer Robert Connor, Jr., states:

> Upon arriving at the scene officers entered the residence and observed a male white sitting at a table with a gun in his possession. The male would not put the gun down and pointed it at the officers.

(ECF No. 25-15). Mr. Connor, along with Defendant Bowers and other officers, are slated to testify in this trial.

### A. February 7, 2025 Hearing

On February 5, 2025, two days after Plaintiff's counsel issued the two Rule 45 subpoenas, Defendant Kenneth Bowers, who was not the target of either subpoena, objected and requested a status conference. On February 7, 2025, at 2:00 p.m., this Court held a hearing on Defendant's objections and overruled them on the record.

Under Rule 45, parties may command a nonparty, *inter alia*, to produce documents. Fed. R. Civ. P. 45(a)(1). Rule 45 further provides that "the issuing court must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "Although irrelevance or overbreadth are not specifically listed under Rule 45 as a basis for quashing a subpoena, courts 'have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26.'" *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 92 (S.D. Ohio 2013) (quoting *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D.Ohio 2011)).

Rule 26, in turn, permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Fed. R. Civ. P. 26(b)(1). The Rule further states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id*. "The party seeking to quash a subpoena bears the ultimate burden of proof." Hendricks, 275 F.R.D. at 253. When assessing a discovery request under Rule 26, "[c]ourts must balance the need for discovery against the burden imposed

3

on the person ordered to produce documents . . . ." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (emphasis added) (citations and quotations omitted).

Defendant's first objection focused on timeliness. He argued that the subpoenas are untimely under the preliminary pretrial order, which set the fact discovery deadline as December 31, 2021. (ECF No. 9). A challenge to "the timeliness of the [third-party] discovery sought" is governed by Rule 26. *See Thorn v. Novartis Pharm. Corp.*, No. 11-373, 2013 WL 6499473, at *2 (E.D. Tenn. Dec. 11, 2013); *Doe 1 v. Anderson*, No. 15-13852, 2017 WL 4941467, at *14 (E.D. Mich. Nov. 1, 2017) (assessing motion to compel documents subpoenaed under Rule 45 to standards contained in the remainder of the discovery rules, including Rule 26).  When faced with a late discovery request, courts may nonetheless consider whether there is good reason for the untimeliness. *See* Fed. R. Civ. P. 26(b)(2)(C)(i-ii) (allowing the court to consider whether "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"); *see also* Fed. R. Civ. P. 16(f)(1)(C) (allowing the court to issue any just order when a party fails to obey a scheduling order's requirement).

Plaintiff here did not dispute that fact discovery had long been closed, but she maintained that the delay was justified. For the Medical Subpoena, she explained that medical providers had been dragging their feet on Plaintiff's requests through normal channels, and that those efforts had proven unfruitful. Defendant, on the other hand, raised concerns that the volume of medical records that the hospital may produce will prejudice their case. Rejecting the argument, this Court noted that the Medical Subpoena seeks records that cover, at most, Mr. Heeter's last few hours at the hospital. But should the hospital produce thousands of pages in medical records, this Court permitted Defendant to return to this Court and seek other remedies that will lessen the defense's burden.

The parties next tackled Plaintiff's request for the grand jury transcripts. According to Plaintiff's counsel, the transcripts were necessary potentially to impeach the officers who will testify at trial. In particular, she pointed to the sworn affidavit of Mr. Connor, who will testify as a witness in this case. In that affidavit, Mr. Connor states: "[O]fficers entered the residence and observed a male white sitting at a table with a gun in his possession. The male would not put the gun down and pointed it at the officers." (ECF No. 25-15). Plaintiff's counsel contended that Mr. Connor obtained this information from another officer on the scene, potentially James Porter, who testified before the state grand jury. She argued that this constituted a "particularized need" for the transcripts because Mr. Porter will testify in this case, and there is evidence to suggest that the testimonies may be inconsistent. Counsel for Defendant, on the other hand, maintained that there is no evidence of any inconsistency to justify disclosure of the grand jury transcripts. Moreover, he emphasized that Plaintiff chose to send interrogatories and requests for admissions, and that this is a discovery fight that should have been had 4-5 years ago.

Asked to explain the delay, Plaintiff's counsel noted that the request was first presented to the Franklin County Court of Common Pleas as a matter of comity. The motion sat unopposed for some time, and when Plaintiff's counsel finally had the opportunity to present it to the presiding judge, the judge permitted the State to file an opposition outside the time frame. The matter—though fully briefed and argued now—had not been adjudicated yet. Given the time constraints, Plaintiff's counsel decided to issue the Rule 45 subpoena.

Ruling on the issue, this Court found that Plaintiff identified a "particularized need" for the transcripts, that is, a realistic possibility that the police officers' testimony before the grand jury—as to how the shooting of this citizen actually occurred—is inconsistent with their anticipated

5

testimony at trial. Because this inconsistent testimony may prove instrumental to impeachment, this Court overruled Defendant's objection and allowed the Grand Jury Subpoena to proceed.

### B. The FCPO's Objections to the Grand Jury Subpoena

Several days after the status conference, and one day after disclosure of the grand jury transcripts was due, counsel for the FCPO (non-party recipient of the Grand Jury Subpoena) sent court staff an email regarding the Grand Jury Subpoena. The FCPO noted that it received the subpoena via email on February 3, 2025, and on February 10, 2025, "timely served the attached written objections to the subpoena on [Plaintiff's counsel]." The FCPO also acknowledged this Court's oral rulings from February 7:

> [Plaintiff's counsel] called me and said the Court held a status conference with the parties last Friday and ordered that the subpoena be complied with, i.e., the Court ordered production of the grand jury transcripts.
>
> Given that the Court did not issue an order after the status conference last Friday, and that Plaintiff's motion for grand jury transcripts has been fully briefed in state court and the parties are awaiting the state court's decision, I am respectfully requesting the Court to hold a status conference so that the FCPO can be heard on its objections to the subpoena.

The FCPO's written objections raised two issues. First, the FCPO argued that the Grand Jury Subpoena does not meet the requisite standard for disclosure of grand jury materials under Ohio law. Second, the FCPO urged that the Franklin County Court of Common Pleas "must be given the opportunity in the first instance" to decide disclosure of these grand jury transcripts, because "comity dictates that the federal courts defer action on any disclosure request until the party seeking disclosure shows that the state supervisory court has considered [the] request."

### C. State Court Decision on February 12, 2025

6

The next day, on February 12, 2025, counsel for the FCPO notified court staff that the Franklin County Court of Common Pleas issued a decision on Plaintiff's request for grand jury materials and attached a copy of the decision.[1] The state court had denied Plaintiff's request, declining to "engage in a fishing expedition to try to gather information based upon speculation that such information might be helpful to [Ms. Heeter's] civil rights litigation." Slip Op. at 4.

The state court's reasoning drew on state law authorities. Specifically, the state court relied on Ohio R. Crim. 6(E) and interpreting case law for the proposition that disclosure of grand jury materials requires showing that "'a particularized need for disclosure exists which outweighs the need for secrecy' and the 'ends of justice require' disclosure." Slip Op. at 2 (quoting *State v. Greer,* 66 Ohio St. 2d 139 ¶ 2 (1981)). With respect to the "ends of justice" prong, the state court emphasized that a petitioner must show "justice can *only be done* if disclosure is made." Slip Op. at 2 (citing *Petition for Disclosure of Evidence,* 63 Ohio St. 2d 212, 218 (1980)). Rejecting Ms. Heeter's arguments, the state court ultimately concluded that this "'particularized need' and the 'ends of justice require' standard" had not been met. *Id.* at 2.

But faced with the same question a week earlier, this Court—applying federal standards—ruled the opposite. Specifically, this Court found that Plaintiff demonstrated a "particularized need" for the grand jury transcripts that outweighed the state's interest in maintaining the secrecy of grand jury proceedings. Because the state court decision is directly at odds with this Court's ruling, this Court must now resolve the tension.

For the reasons stated below, this Court concludes that the state court decision does not have preclusive effect on this Court's oral rulings at the February 7, 2025 conference. The FCPO's written objections are also overruled, and the FCPO's request for a status conference is denied as

---

[1] *See In re Investigation of the Death of Billy Heeter*, 19-CM-34, slip op. at 2 (Franklin Cnty. Ct. Com. Pl. Feb. 12, 2025) (hereinafter, "Slip Op.").

7

well. The FCPO is **ORDERED** to comply with the Grand Jury Subpoena and disclose the requested grand jury transcripts forthwith.

## II. LAW & ANALYSIS

### A. This Court has the Authority to Order Disclosure of State Grand Jury Materials

The first question this Court must address is what effect, if any, the state court's denial of Plaintiff's request for grand jury transcripts has on this Court's earlier ruling upholding that same request. This Court agrees that, "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities." *See Douglas Oil Co. of California v. Petrol Stops Nw.*, 441 U.S. 211, 226 (1979). But "[i]t does not follow . . . that in every case the court in which the grand jury sat should make the final decision whether a request for [grand jury] disclosure . . . should be granted." *Douglas Oil*, 441 U.S. at 230–31. It makes little sense, for example, to require the supervisory court to weigh in on the disclosure if it is "unlikely to have dependable knowledge of the status of, and the needs of the parties in, the civil suit in which the desired transcripts are to be used." *Id.* at 231. Because the suit in which the grand jury transcripts are desired is the pending federal § 1983 case, this Court is equipped to balance Plaintiff's need for the materials against the strong federal interest in grand jury secrecy.

That is not to say that principles of federal-state comity are of no effect. It is appropriate for federal courts to recognize state interests and privileges to the extent that doing so poses "no substantial cost to substantive and procedural policy." *Socialist Workers Party v. Grubisic*, 619 F.2d 641, 644 (7th Cir. 1980). In *Socialist Workers Party*, a case involving a similar effort to obtain state grand jury materials for use in a federal civil rights action, the Seventh Circuit opined that comity "dictates that the federal courts defer action on any disclosure requests until the party seeking disclosure shows that the state supervisory court has considered his request and has ruled

8

on the continuing need for secrecy." 619 F.2d at 644. This, however, "does not give the state courts a veto over disclosure in this federal civil rights case." *Id.* Rather, the primary reason for directing a federal litigant's request for state grand jury materials to the state court first is "merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings or, at least, to ensure that the important state interest in secrecy is thoroughly considered." *Id*.

For that reason, federal courts disagree whether directing a request for disclosure of state grand jury materials is a "requirement" or preferred "practice." *See Bethea v. City of New York*, No. 16CV2522NGGSMG, 2017 WL 979030, at *2 (E.D.N.Y. Mar. 13, 2017) (noting that the "practice [of directing request for disclosure of grand jury materials to the state court first] . . . is not required by precedent but rather is grounded in a policy of comity between state and federal courts and deference to the court that supervised the grand jury's activities"); *compare Brunson v. City of Dayton*, 163 F. Supp. 2d 919, 923 (S.D. Ohio 2001) ("Since the Plaintiff has not sought the grand jury materials in question from the state court, this Court sustains [the] Motion to Quash[.]"), *with Wheatt v. City of E. Cleveland, No. 1:17-CV-00377*, 2017 WL 3392485, at *2 (N.D. Ohio Aug. 8, 2017) ("Ohio's rule does not always require parties to seek disclosure from the court that supervised the grand jury."), *reconsideration denied*, No. 1:17-CV-00377, 2017 WL 3599187 (N.D. Ohio Aug. 22, 2017).

Indeed, a number of courts have recognized that it is likely "more burdensome than deferential to ask a state court to balance the competing interests of grand jury secrecy with the needs of a civil litigation that is unfamiliar to the state court and not pending before it." *See Bethea*, 2017 WL 979030, at *2–3; *see also Wheatt*, 2017 WL 3392485, at *2 ("When the pending federal § 1983 case is before this Court, the Cuyahoga County Court of Common Please is not in the best position to determine whether the grand jury material should be disclosed."); *Baynes v. Ruderfer*,

9

234 F. Supp. 3d 574, 577 (S.D.N.Y. 2017) ("[U]nlike a state court supervising a grand jury, courts where . . . [the] civil cases are pending and in which grand jury testimony is sought to be discovered are armed with special knowledge of the status of the civil actions") (citation and quotation marks omitted).

Ultimately, although Plaintiff's request was pending before the Franklin County Court of Common Pleas at the time this Court ordered disclosure of the grand jury transcripts, the state court was afforded the comity it is due. It had the opportunity to review Plaintiff's request and consider her arguments in favor of disclosure. It also had the opportunity to raise concerns about the necessity of maintaining secrecy over the requested materials and did not make any findings relevant to the subject matter of the requested documents. No more is required. Plaintiff's request for state grand jury materials was therefore properly before this Court on February 7 and remains properly before this Court today.

The state court's subsequent denial of Plaintiff's request for the grand jury transcripts is also of no moment. Indeed, federal courts appear to agree unanimously that the state court's decision on a federal litigant's request for state grand jury material does not bind the federal court. *See Brunson*, 163 F. Supp. 2d at 921–22 ("The Seventh Circuit stressed that the state court had not been given 'a veto over disclosure;' rather, the requirement that the plaintiffs initially attempt to secure the state grand jury materials from the state supervisory court 'is designed merely to forestall unnecessary intrusion by the federal courts in state grand jury proceedings.'" (quoting *Socialist Workers Party*, 619 F.2d at 644)); *Baynes*, 234 F. Supp. 3d at 577 (state law and county court's denial of plaintiff's application for disclosure of grand jury minutes "does not bind this Court"); *Goldstein v. City of Long Beach*, 603 F. Supp. 2d 1242, 1250 (C.D. Cal. 2009) (requirement that federal court has to consider state privileges "does not give the state courts a

veto over disclosure in this federal civil rights case") (internal quotation marks and citation omitted)).

Thus, although the Franklin County Court of Common Pleas denied Plaintiff's request for grand jury transcripts, there is no dispute that this Court has independent authority to order disclosure of the transcripts as a matter of federal law.

### B. Plaintiff Satisfies the Federal Standards Governing Disclosure of Grand Jury Transcripts

While comity requires this Court to consider state privilege law, federal law controls. *See Douglas Oil*, 441 U.S. at 222; *In re Grand Jury Matter of Metts*, 765 F.2d 144 (6th Cir. 1985) (analyzing request for state grand jury materials under Fed. R. Crim. P. 6(e)); *Socialist Workers Party*, 619 F.2d at 643–444 (federal law controls whether testimony given before a state grand jury is privileged in a federal civil rights action). Thus, even if the state court determines—as the Franklin County Court of Common Pleas did here—that the materials are privileged under state law, only this federal court may determine whether the materials are privileged under federal common law. *See Anilao v. Spota,* 918 F.Supp.2d 157, 171 (E.D.N.Y. 2013) (noting that a federal court must make an independent determination of whether grand jury materials should be released "if the state court denies the request and the party seeking disclosure challenges that decision before the federal court.").

Under federal law, the party seeking disclosure of grand jury materials must show a "particularized need" for the materials under Rule 6(e)(3) of the Federal Rules of Criminal Procedure and related caselaw. Parties seeking grand jury transcripts under Rule 6(e) "must show that the material they seek is needed to avoid a possible injustice to another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil,* 441 U.S. at 222. The burden is on the

party seeking disclosure to demonstrate this need "'with particularity,'" *id*. at 221 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958)), and that the need outweighs the public interest in grand jury secrecy. *Id*. at 222.

A generalized desire for discovery will not do. *See e.g.*, *Baker v. U.S. Steel Corp.*, 492 F.2d 1074, 1076 (2d Cir.1974). Nor will mere speculation. *See United States v. Walczak*, 783 F.2d 852, 857 (9th Cir.1986) (denying a motion for grand jury transcripts because defendant did not allege specific facts supporting his motion, making his motion speculative). Rather, "the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.'" *Douglas Oil Co.*, 441 U.S. at 222 n. 12 (quoting *Procter & Gamble Co.*, 356 U.S. at 683). "Such use," the Court explained, "is necessary to avoid misleading the trier of fact." *Id*.

### 1. Particularized Need

It is axiomatic that the jury should have the opportunity to determine a witness's credibility with full knowledge of any prior testimony. Prior statements "inconsistent with the declarant's testimony and [ ] given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition" are not hearsay. Fed. R. Evid. 801(d)(1). As this Court found at the status conference, Plaintiff demonstrated that access to the grand jury transcripts would yield information that potentially impeaches officers testifying at this trial. Unlike other cases where courts have found no "particularized need" for grand jury materials,[2] Plaintiff here has identified, as explained above,

---

[2] *Cf. State v. Hunter*, 2011-Ohio-6524, ¶ 142 ("Hunter claims that he established a particularized need because he was unable to fully confront his accusers without disclosure of their grand jury testimony. But Hunter's claim that the grand jury testimony might have contained material evidence or might have aided his cross-examination does not establish a particularized need."); *State v. Webb*, 1994-Ohio-425, 70 Ohio St. 3d 325, 337, 638 N.E.2d 1023, 1034 ("It is always conceivable that grand jury material might be quoted out of context, but general assertions, citing no specific facts of record, do not establish particularized need . . . . Nor does Webb cite any other specific basis for finding particularized need. Webb speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination of the Becks by revealing contradictions. These arguments could be made in every case. Nothing in the record supports them here."); *State v. Henness*, 1997-Ohio-405, 79 Ohio St. 3d 53, 679 N.E.2d 686

the respect in which the grand jury testimony likely contradicts trial evidence and may therefore contradict trial testimony. *See Wheatt*, 2017 WL 3392485, at *1–2 (granting the disclosure request without referring the matter to the Ohio county court, where the case involved a civil rights action against law enforcement officers because federal § 1983 claims were at issue and the county court thus would "have no firsthand knowledge of the litigation in which the transcripts allegedly [were] needed"); *Horizon of Hope Ministry v. Clark Cty., Ohio*, 115 F.R.D. 1, 2–4 (S.D. Ohio 1986) (ordering the disclosure of grand jury matter without addressing whether referral of the matter to the county court was appropriate because "[o]nly by review of the transcripts requested c[ould] Plaintiffs possibly show that the grand jury proceedings in question were aimed at depriving them of their civil rights rather than the legitimate investigation of a criminal act").

Plaintiff has therefore demonstrated a "particularized need" for the transcripts, which are necessary to avoid a possible injustice.

### 2. Interest in Grand Jury Secrecy

Under federal law, state grand jury materials are given the same protection from disclosure as is afforded to federal grand jury materials. *Socialist Workers Party*, 619 F.2d at 643–444. In *Douglas Oil*, the Supreme Court outlined the reasons for grand jury secrecy as follows:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witness who may testify before [the] grand jury and later appear at the trial of those indicted, by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from

---

("Defendant's claim that witness' grand jury testimony might have differed from his trial testimony, because witness' bond was reduced after his grand jury appearance, was mere speculation, insufficient to show particularized need for grand jury testimony, as would warrant disclosure.")

> disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil,* 441 U.S. at 219 n. 10 (citations and quotation marks omitted). The Court also cautioned courts to consider the effect of free disclosures on future grand juries.:

> [C]ourts must consider not only the immediate effects [of disclosure] upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

*Id*. at 222. In their objections to the Grand Jury Subpoena, neither the FCPO nor Defendant articulated a reason, beyond an abstract concern for grand jury secrecy, to justify continued concealment of the transcripts. Defendant and the state court place import on the fact that Plaintiff "had the opportunity to depose" these officers "but apparently chose not to do so." Slip Op. at 4. It is unclear what legal significance this Court should draw from that observation. To withhold the information Plaintiff seeks would be "inimical to the purpose of federal civil rights actions" and this Court's truth-finding function. *See Goldstein*, 603 F. Supp. 2d at 1259. Although grand jury testimony is ordinarily confidential, that secrecy is maintained to serve particular ends. But when the party opposing disclosure makes no argument as to how those ends will be served and a civil rights plaintiff identifies a countervailing interest in disclosure, secrecy should give way to the truth-determining function of the trial process and the fair administration of justice.

### III. CONCLUSION

For the reasons stated above, this Court concludes that the state court decision does not have preclusive effect on this Court's oral rulings from the February 7, 2025 conference. The FCPO's written objections are overruled, and the FCPO's request for a status conference is denied

as well. The FCPO is **ORDERED** to comply with the Grand Jury Subpoena and disclose the requested grand jury transcripts to Plaintiff forthwith.

                                                  */s/ Algenon L. Marbley*
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: February 17, 2025**