IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN HEETER, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cv-6481 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| KENNETH BOWERS, | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before this Court on Plaintiff Karen Heeter's Motion to Bifurcate Trial on Liability and Damages (ECF No. 92) and Motion for Leave to File First Amended Complaint (ECF No. 93). For the following reasons, this Court **GRANTS** Plaintiff's Motion for Bifurcation (ECF No. 92) and **DENIES** Plaintiff's Motion for Leave to Amend (ECF No. 93).

**I.     BACKGROUND**

This is an action under 42 U.S.C. § 1983 and Ohio state law against Police Officer Kenneth Bowers and the now-dismissed Columbus Police Department, following the shooting of Bill G. Heeter at his residence on November 21, 2018. *See generally Heeter v. Bowers*, 99 F.4th 900, 904–07 (6th Cir. 2024) (reciting legal and factual background). Officers from the Columbus Police Department arrived at Mr. Heeter's home at around 10 a.m. that morning, in response to a 911 call that Mr. Heeter was threatening to kill himself. *Id.* At 10:17 a.m., Officer Kenneth Bowers fired five rounds from his M16 service rifle into Mr. Heeter's chest. *Id.* Mr. Heeter was pronounced dead at the hospital approximately 40 minutes later. *Id.*

Mr. Heeter's family filed this action in state court in November 2020, and Defendants removed the action to this Court in December 2020. (ECF No. 1). Plaintiffs' Complaint alleges,

1

*inter alia*, that Officer Bowers unlawfully entered Mr. Heeter's home without consent or probable cause in violation of the Fourth Amendment; that he used excessive force in violation of the Fourth Amendment when he shot and killed Mr. Heeter; and that he violated Mr. Heeter's Fourteenth Amendment right to adequate medical care while in police custody by failing to provide the emergency first aid that Mr. Heeter needed after the shooting. (ECF No. 3). Plaintiffs' Complaint also asserts state-law claims for assault, battery, and wrongful death under Ohio Rev. Code § 2125.02. (*Id.*).

On March 28, 2023, this Court granted Defendants' motion for summary judgment with respect to Plaintiffs' constitutional claims against the CPD and Plaintiffs' Fourth Amendment unreasonable search and seizure claim against Defendant Bowers. (ECF No. 37). This Court, however, denied summary judgment on Plaintiffs' Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference claims against Defendant Bowers, as well as the state law claims against both Officer Bowers and the CPD. (*Id.*).

On interlocutory appeal, the Sixth Circuit "affirm[ed] the judgment . . . in all but one respect," reversing this Court's denial of summary judgment with respect to Plaintiffs' state-law claims against Officer Bowers in his official capacity and the CPD. *Heeter*, 99 F.4th at 922. Thus, the only triable claims that remain post-remand are claims against Defendant Bowers in his individual capacity for excessive force under the Fourth Amendment pursuant to 42 U.S.C. § 1983; for deliberate indifference under Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983; and for assault, battery, and wrongful death claims under Ohio law. (*See* ECF No. 48).

A jury trial in this matter is currently scheduled for July 7, 2025. (*See* ECF No. 97). At trial, the jury will be asked to determine whether Defendant Officer Bowers used more force than is "objectively reasonable" under the circumstances when he shot and killed Mr. Heeter, in

violation of the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 397 (1989); whether Officer Bowers' failure to provide any first aid in the minutes after the shooting violated Mr. Heeter's Fourteenth Amendment right to adequate medical care while in police custody, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), and whether Officer Bowers committed wrongful death under Ohio law by acting in a wanton or reckless manner. If Officer Bowers is found liable on any of these claims, the jury must also determine the amount of damages to which Plaintiff is entitled.

In preparation for trial, the parties have filed motions in limine (ECF Nos. 62, 65); witness lists (ECF Nos. 61, 68); exhibit lists (ECF Nos. 64, 69, 70, 86–88); and proposed jury instructions (ECF Nos. 63, 66, 67, 79, 82). On February 18, 2025, this Court held a final pretrial conference, during which it orally ruled on the parties' motions in limine. (ECF No. 95). As memorialized in a subsequent order, this Court first granted Defendant's motion to exclude the following upon Plaintiffs' stipulation: (1) evidence and arguments related to Plaintiffs' dismissed unlawful entry into the home claim; (2) evidence and arguments related to Plaintiffs' dismissed municipal liability claims; (3) evidence and arguments related to prior uses of force by Bowers; and (4) the expert reports. (ECF No. 98 at 4). This Court also tentatively granted Defendant's motion to exclude arguments or evidence regarding alleged bad tactics or planning that may have led to Officer Bowers' use of deadly force. (*See id.* at 6 (granting motion "with [a] caveat")).

As to Plaintiffs' motion in limine, this Court ruled that "Bill Heeter's suicide threats leading up to, and on, November 21, 2018 are admissible if known by Officer Bowers at the time of the shooting"; and that, "[i]f this Court does not bifurcate trial on the issues of liability and damages," his "suicide threats and past allegations of abuse that were not known by Officer Bowers are admissible only to the extent it is relevant to damages under Ohio's wrongful death statute." (*Id.*

at 7). This Court also excluded evidence about other weapons located at the Heeters' residence, commendations or awards given to police-officer witnesses, and Officer Bowers' financial situation, finding such evidence irrelevant. (*Id.*).

The day before the final pretrial conference, Plaintiffs moved to bifurcate trial into a liability phase and a damages phase in order to "avoid any unfair prejudice" that might result from the jury considering certain evidence that, while not relevant to the jury's liability determination, would be relevant to the jury's assessment of damages. (ECF No. 92). The following day, Plaintiff also moved for leave to file a First Amended Complaint "to conform her allegations to the evidence uncovered in preparation for trial." (ECF No. 93). Defendant opposed both motions (ECF No. 99), and Plaintiff replied. (ECF No. 100). Although Defendant urged the denial of Plaintiff's motion to amend the Complaint, he nonetheless agreed that the assault and battery claims are barred by the one-year statute of limitations, and that Bill Heeter's children—Plaintiffs Jonathon Heeter, Stephanie Heeter, and Brandon Heeter—are improper plaintiffs. (*See* ECF No. 100 at 4). In light of the parties' submissions, this Court will use the singular "Plaintiff" moving forward, referring to Ms. Karen Heeter, and only consider the state law claim of wrongful death.

For the reasons set forth below, this Court **GRANTS** Plaintiff's Motion for Bifurcation (ECF No. 92) and **DENIES** Plaintiff's Motion for Leave to Amend (ECF No. 93).

## II. LAW AND ANALYSIS

### A. *Plaintiff's Motion to Bifurcate (ECF No. 92)*

Plaintiff asks this Court to bifurcate trial on liability and damages "to avoid any unfair prejudice" that might result from the jury considering evidence that, while irrelevant to the jury's liability determination, would be relevant to the assessment of damages. (ECF No. 93).

4

Bifurcation is governed by Federal Rule of Civil Procedure 42(b), which states that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The principal purpose of the rule is to enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties." *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988). The decision to try issues separately is within the discretion of the court. *Id*. The three considerations courts apply when determining if bifurcation is appropriate are: (1) whether the issue is indeed a separate issue; (2) whether it can be tried separately without injustice or prejudice; and (3) whether a separate trial will be conducive to judicial economy, especially if a decision regarding that question would be dispositive of the case and would obviate the necessity of trying any other issues. *In re Bendectin Litig.*, 857 F.2d 290, 320 (6th Cir. 1988). Plaintiff, as the party seeking bifurcation, "has the burden of showing that concerns such as judicial economy and prejudice weigh in favor of granting the motion." *Woods v. State Farm Fire & Cas. Co.*, No. 2:09-cv-482, 2010 WL 1032018, at *1 (S.D. Ohio Mar. 16, 2010) (citing Wright & Miller, Federal Practice and Procedure § 2388 (2d ed. 2006)).

This Court concludes that bifurcating the liability and damages phases of the trial is appropriate. First, the liability and damages portions of the trial will involve separate and distinct issues and the overlap in evidence is not so significant as to require a unified trial. Beginning with liability, the jury's consideration of the Fourth Amendment excessive force claim will focus on whether Officer Bowers had reasonable cause to believe that Mr. Heeter posed an immediate threat to his safety or others, such that deadly force was needed to avoid that threat. *Graham v. Connor,* 490 U.S. 386, 396 (1989); *Tennessee v. Garner,* 471 U.S. 1, 11 (1985); *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 902–03 (6th Cir. 1998). Officer Bowers' liability under the Fourteenth

5

Amendment turns on whether Mr. Heeter's injury following the shooting "called for immediate first aid before professional paramedics arrived, and [whether] Officer Bowers—trained in first aid and unoccupied by police duties—could and should have rendered that care." *Heeter*, 99 F.4th at 919. Finally, Defendant is liable for wrongful death under Ohio law if he acted in wanton or reckless manner when he shot Mr. Heeter.[1] Ohio Rev. Code § 2125.01. Evidence to be considered when determining liability, therefore, will be limited to the totality of the circumstances surrounding the shooting of Mr. Heeter, and the immediate aftermath of the shooting.

By contrast, in assessing damages, the jury may consider the losses that Mr. Heeter himself suffered as a result of the alleged constitutional violations, as well as the consequent collateral losses Mr. Heeter's family suffered as a result of Mr. Heeter's death. Specifically, under § 1983, Plaintiff is entitled to compensatory damages for Mr. Heeter's actual losses, including the pain and suffering that Mr. Heeter experienced as a result of the alleged excessive force or deliberate indifference. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986); *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (recognizing that a § 1983 cause of action "is entirely personal to the direct victim of the alleged constitutional tort" and that "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members") (citing *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984)); *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 821 (S.D. Ohio 2002). Under Ohio law, Plaintiff is also entitled to damages for the loss of Mr. Heeter's support,

---

[1] Defendant argues that the wrongful death claim should only proceed on the excessive force claim, not deliberate indifference, because "Plaintiffs do not have an expert qualified to dispute the coroner's conclusion as to cause of death or to testify that Mr. Heeter would have survived if Officer Bowers provided basic first aid." (ECF No. 99 at 2 & n.1). Plaintiff's reply "concedes that . . . her allegations that Bill died as a result of Bowers' deliberate indifference are off the table for the upcoming trial.'" (ECF No. 100 at 9). Given these stipulations, Defendant's liability for wrongful death will proceed only on the excessive force claim.

6

services, society, companionship, care, assistance, attention, protection, guidance, counsel, instruction, training, and education under Ohio's wrongful death statute, Ohio Rev. Code § 2125.02(B).

Resisting bifurcation, Defendant argues that "damages for Plaintiff's deliberate indifference claim are inextricably tied up with the analysis of whether Defendant Bowers was deliberately indifferent at all," and thus, "relevant evidence would need to be presented twice if trial is bifurcated." (ECF No. 99 at 3). Plaintiff, for her part, agrees that there is overlap between the proof needed for liability and damages under the Fourteenth Amendment. (ECF No. 100 at 5).

Although the jury's determination of both issues will consider evidence related to the immediate aftermath the shooting, this evidence need not be presented twice if trial is bifurcated, because the same jury can be impaneled in both phases of the trial. *See Porter v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:12-CV-00829-CRS, 2018 WL 505594, at *1–2 (W.D. Ky. Jan. 22, 2018) ("By using the same jury, the parties will not be required to recall each of the witnesses during the damages trial to repeat their story of the case . . . ." (citation modified)). If the jury finds Defendant liable in the trial's first phase, the same jury merely will reconvene for the damages phase of the trial.

Any overlap in evidence, moreover, must be weighed against the risk of prejudice to the parties. Here, a unified trial on liability and damages risks prejudice to Plaintiff because, as Defendant has previously conceded, "information regarding [Bill Heeter's] past suicide attempts, threats, and allegations of abuse that [Officer Bowers] was not aware of prior to the shooting" is *irrelevant* to the excessive force liability determination but remains relevant to the wrongful death damages. (ECF No. 98 at 7). A bifurcated trial will allow the jury to hear evidence pertaining to the conduct of the Defendant and the relevant circumstances surrounding the shooting without

7

being distracted by testimony and evidence concerning Mr. Heeter's personal life that is relevant solely to damages. Trying Plaintiff's claims in two phases is also conducive to judicial economy, because a finding of non-liability in the first phase would obviate the necessity of determining any damages. *In re Bendectin Litig.*, 857 F.2d 290, 320 (6th Cir. 1988).

Because the issues of liability and damages are separable, and because separation of the issues would reduce prejudice and promote efficiency, a bifurcated trial is appropriate in this case.

### B. *Plaintiff's Motion to Amend*

Plaintiff also moves to amend the operative Complaint. (ECF No. 93). Specifically, she seeks to file an amended complaint that removes Mr. Heeter's children as plaintiffs; drops the state law claims of assault and battery; and withdraws the factual allegations in Paragraph 23 of the Complaint, in order to align Plaintiff's pleadings with "the evidence uncovered in preparation for trial." Defendant opposes the motion, contending that the amendments are unnecessary; that Plaintiff fails to establish good cause for the delay; and that the proposed amendments are futile. (ECF No. 99).

Federal Rule of Civil Procedure 15(a) states that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend "is committed to the district court's sound discretion." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986). Denial of a motion to amend is proper "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Denoewer v. Union Cnty. Indus.*, 611 F. Supp. 3d 458, 481 (S.D. Ohio 2020) (internal quotation marks and citation omitted); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). When the trial court sets a deadline for amending the pleadings, Federal Rule of Civil Procedure 16 requires the movant to establish "good cause" to amend. Fed. R. Civ. P. 16(b)(4). Courts weigh

8

four factors in this analysis: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *NetJets Ass'n of Shared Aircraft Pilots v. NetJets Aviation, Inc.*, 711 F. Supp. 3d 825, 832 (S.D. Ohio 2024) (citation omitted).

Because this Court's deadline to amend pleadings expired on April 21, 2021 (ECF No. 9), and Plaintiff's motion for leave to amend passed that deadline, this Court first determines whether Plaintiff has satisfied the "good cause" standard under Rule 16(b)(4). Only after a party establishes good cause under Rule 16(b) may the Court consider whether amendment is proper under Rule 15(a). *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir.2003).

Beginning with the reasons for the delay, Plaintiff explains that her amendment is primarily based on "testimony supplied by Bowers during summary judgment proceedings," which was unavailable before the deadline for dispositive motions on March 2, 2022. (ECF No. 100 at 9–10). Plaintiff further notes that her original lead counsel became ill and passed away during the course of the litigation, and current counsel only appeared on Plaintiff's behalf in June 2024, after the interlocutory appeal was filed. (*Id.* at 10). The totality of these circumstances, she contends, "demonstrates good cause for Heeter's delay beyond the original deadline of April 5, 2021, and even beyond the disclosure of evidence on March 2, 2022, which forms the basis of the request." (*Id.*).

Despite the difficult circumstances, this Court is not persuaded that Plaintiff was unable, in the exercise of diligence, to pursue the proposed amendments sooner. Indeed, because the proposed amendments seek only omissions, they can hardly be characterized as having been time-consuming to prepare. But even if Plaintiff had shown the necessary diligence, the relative unimportance of the proposed amendments weighs against a finding of good cause.

9

With respect to the first and second proposed amendments, which seek to remove improper plaintiffs and to omit the assault and battery claims, amending the complaint is unnecessary, "because the Court knows which parties and claims it has dismissed." *Casey v. Rouse*, No. 7:17-CV-145-KKC, 2019 WL 3381770, at *2 (E.D. Ky. July 26, 2019) (denying motion to amend Complaint "to delete parties and dismissed claims"); *see Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x. 104, 114 (6th Cir. 2009) ("There is no need to amend a complaint to remove a dismissed claim[.]").

The importance of the third proposed amendment, which seeks to delete Paragraph 23, presents slightly thornier questions. To ensure that Officer Bowers does not "try to use this allegation as evidence," (ECF No. 93 at 2), Plaintiff seeks to withdraw the following assertion in the Complaint, which states:

> The item that one of the officers seemed to have thought was a gun on the table turned out to be a large lighter. Officer Gibson allegedly located a gun near Bill Heeter's feet after he collapsed and removed it from the house.

(ECF No. 3 ¶ 23). According to Plaintiff, "the first sentence is simply not born out by any of the available evidence collected by the parties in anticipation of trial," and "[t]here is simply no evidence supporting the idea that anyone mistook a lighter on the table for Bill's Taurus handgun." (ECF No. 93 at 2). Defendant disagrees. He points to certain evidence in the record that supports the allegation, including "[a] scene photo [that] shows a large lighter on the table," (*id*. (citing ECF No. 84-9)), and Officer Linda Gibson's testimony that "[she] was scanning the table and did not see the gun," and that "[i]t looked like there was a black inhaler or cigarette lighter on the table." (*Id*. (quoting ECF No. 21-8 ¶ 11)).

The crux of the parties' disagreement comes down to what binding effect, if any, the allegation has at trial. Defendant argues that amending the Complaint "would make it so that the

factual assertion in Paragraph 23 is not binding as a judicial admission." (ECF No. 99 at 5). Plaintiff responds that Paragraph 23 is not a judicial admission, even if the motion to amend is denied, because Bowers "effectively denied it in relevant part" in his Answer. (ECF No. 93 at 7). Specifically, Defendant's Answer "admit[s] that Officer Gibson located a gun near Heeter's feet and removed it from the house," but states that "Defendants are without information or knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 of the Complaint, and therefore deny those allegations." (*Id.* (quoting ECF No. 4 ¶ 23)). Because the Answer was effectively a denial under Fed. R. Civ. P. 8(b)(5), Plaintiff argues that the allegation cannot be used as a binding judicial admission against Plaintiff at trial. (*Id.*). If this Court denies Plaintiff leave to amend, Defendant maintains that Paragraph 23 is still admissible as substantive evidence. (ECF No. 99 at 5). Plaintiff likewise plans "to use paragraph 23 of the Answer" to challenge Defendant's view of the evidence if her request to amend is denied. (ECF No. 100 at 5).

To better understand the parties' arguments, it is helpful to outline the key differences between judicial admissions and evidentiary admissions. The Sixth Circuit has recognized that "factual assertions in pleadings . . . , unless amended, are considered judicial admissions conclusively binding on the party who made them." *Davis v. LifeTime Cap., Inc.*, 740 F. App'x 820, 832 (6th Cir. 2018) (quoting *Kay v. Minacs Group (USA), Inc.*, 580 F. App'x 327, 331 (6th Cir. 2014)). "Judicial admissions eliminate the need for evidence on the subject matter of the admission, as admitted facts are no longer at issue. Once made, the subject matter of the admission should not be reopened in the absence of a showing of exceptional circumstances." *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549, 550-51 (6th Cir. 1986). Because a party who has made a judicial admission may not controvert it at trial, such an admission is not

11

evidence at all, but rather a way to withdraw a fact from contention. *See Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312-13 (6th Cir. 2011) (explaining that judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact") (citation omitted)).

Unlike judicial admissions, evidentiary admissions are "mere evidence, are not conclusive, and may be contradicted by other evidence." *Al Qari v. Am. Steamship Co.*, 689 F. Supp. 3d 468, 479 (E.D. Mich. 2023), *appeal dismissed*, No. 23-1836, 2023 WL 8704110 (6th Cir. Oct. 12, 2023). When original pleadings are amended, the original allegations—though no longer judicial admissions—may still be admissible at trial as evidentiary admissions. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.) ("[A]llegations in a pleading that has been withdrawn may be allowed into evidence as an admission of the party, but ordinarily must be offered in evidence if they are to be used for this purpose."); *Matter of Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982) ("[I]f a pleading is amended, withdrawn or superseded by a substitute pleading, it ceases to be usable as a conclusive judicial admission, but is admissible in evidence as an evidentiary admission." (citing *Raulie v. U.S.*, 400 F.2d 487, 526 (10th Cir.1968)); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir. 1929) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent."); *L'Etoile v. New England Finish Sys., Inc.*, 575 F. Supp. 2d 331, 339 (D.N.H. 2008) ("There is authority treating statements made in complaints or other pleadings as admissions by a party-opponent, and therefore admissible at trial, even if the statement is withdrawn before then by amendment or otherwise." (citing cases)).

The classification of Paragraph 23 as a judicial admission would relieve Defendant from presenting any evidence that the statement is true. But "[i]n order to qualify as [a] judicial admission[]," this Court must be satisfied that the statement was "deliberate, clear and unambiguous." *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997) ("Because of their binding consequences, judicial admissions generally arise only from deliberate voluntarily waivers that expressly concede . . . an alleged fact . . . ." (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir.1975)).

Paragraph 23 does not rise to this level. First, the allegation uses "guarded and qualified" words. *Id.*; *see e.g.*, ECF No. 3 ¶ 23 ("The item that one of the authors *seemed* to have thought was a gun . . . .") (emphasis added)); *id.* ("Officer Gibson *allegedly* located a gun . . . ." (emphasis added)). Even if the assertion is a judicial admission, the trial court has "broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases." *Id.* (quoting *Belculfine*, 527 F.2d at 944). Because the pleading at issue concerns the conduct of third parties— conduct that both parties plan to address through conflicting record evidence—the factual determination is better left to the jury. *See MacDonald*, 110 F.3d at 340 ("If a doubt exists as to the [judicial admission], the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury.") (citing *Oscanyan v. Arms Co.*, 103 U.S. 261, 263 (1880)); *see also* McCormick On Evid. § 257 (9th ed. 2025) (noting "the potential unfairness involved in admitting pleadings . . . particularly where the pleading at issue concerned the conduct of third parties." (citing cases)).

This Court will therefore treat Paragraph 23 as non-binding evidence, subject to contradiction by other evidence at trial. Consequently, deleting Paragraph 23 will have little impact at trial, because even if superseded, Paragraph 23 may still be admissible in evidence. *See*

13

*188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations.").

Factors three and four of the good cause analysis look to the "potential prejudice in allowing the amendment" and "the availability of a continuance to cure such prejudice." Plaintiff contends that an amended complaint presents no risk of prejudice, as the parties have time before the start of trial "to adjust their trial strategies to conform with an amended set of pleadings." (ECF No. 100). Defendant does not address either factor in his briefing.

On the one hand, Plaintiff's proposed Amended Complaint adds no new facts or claims that would require additional discovery. On the other hand, if a complaint is amended, the defendant "should be entitled to amend the answer to meet the contents of the new complaint and, if this is done, any admissions in the initial responsive pleading will be superseded by the amended answer." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1476 (3d ed.). Given the nearly four-year delay in seeking amendment and the approaching trial date, this Court concludes that permitting Plaintiff to amend the Complaint will invite further proceedings and delay the trial date. Indeed, the Sixth Circuit has cautioned that allowing a plaintiff to amend a complaint "after discovery is closed and summary judgment motions are fully briefed" imposes "significant prejudice on defendants," and "[a]llowing amendment after summary judgment motions have been decided is *especially* problematic." *See Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020). The last two factors therefore slightly weigh against permitting Plaintiff to amend the Complaint.

14

Thus, balancing the four factors, this Court concludes that Plaintiff has not established "good cause" under Fed. R. Civ. P. 16 to amend the Complaint. Because Plaintiff has not demonstrated good cause to meet the requirements of Rule 16(b), this Court need not analyze Plaintiff's motion under the standards of Rule 15(a). Plaintiff's motion to amend (ECF No. 93) is therefore **DENIED**.

### III. CONCLUSION

For the foregoing reasons, this Court **GRANTS** Plaintiff's Motion for Bifurcation (ECF No. 92) and **DENIES** Plaintiff's Motion for Leave to Amend (ECF No. 93).

**IT IS SO ORDERED**.

_____
ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED: June 20, 2025**