**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **KAREN HEETER, *et al.*,** | : | **Case No. 2:20-cv-6481** |
| | : | |
| **Plaintiffs,** | : | **Judge Algenon L. Marbley** |
| | : | |
| **v.** | : | |
| | : | |
| **KENNETH BOWERS,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>OPINION & ORDER</u>**

This matter is before the Court on Plaintiffs' Motion for Judgment as a Matter of Law

pursuant to Fed. R. Civ. P. 50(b) and Motion for a New Trial pursuant to Fed. R. Civ. P. 59(a).

(ECF No. 136). For the reasons stated below, Plaintiffs' Motion for Judgment as a Matter of Law

and Motion for a New Trial are **DENIED**.

**I. BACKGROUND**

**A. Factual Background[1]**

On November 21, 2018, Bill G. Heeter was shot dead inside his Columbus home by

Defendant Columbus Police Department Officer Kenneth Bowers, after the Columbus Police

Department responded to two 911 calls regarding Mr. Heeter that morning. First, at around 9:00

a.m., Franklin County dispatch received a 911 call, stating that Mr. Heeter had made suicidal

threats to jump in front of a bus. Several police officers responded to the Heeter residence, but left

after they were unable to locate Mr. Heeter. Second, Mr. Heeter's wife Karen Heeter called 911

---

[1] In Plaintiffs' Motion for Judgment as a Matter of Law and Motion for New Trial (ECF No. 136) and Defendant Bowers' responsive filing (ECF No. 138), the Parties have provided limited briefing on the factual background of the case. (ECF Nos. 136 at 1–3; 138 at 4–5). Thus, this Court provides the relevant factual background as taken from the record.

requesting help at approximately 9:58 a.m. She stated that Mr. Heeter was at their home, suicidal, and in possession of a firearm. In response to this call, Officer Bowers—along with nine other police officers—responded to the Heeter residence. Karen Heeter informed the officers that Mr. Heeter had threatened to kill himself and that he was inside the house with a gun. (Joint Trial Ex. 15 at 2:50–3:00).[2]

Multiple officers approached the home, including Officer Bowers, and gathered on the front porch outside the entrance. They found Mr. Heeter seated at the dining room table, smoking a cigarette. (1:45–1:53; 3:36–3:50). Sergeant Redding positioned himself on the side of the house and observed Mr. Heeter through a window to the dining room. He informed the other officers that Mr. Heeter had a gun in his right hand, pointed down at the floor. (5:54–6:00). The officers ordered Mr. Heeter multiple times to place the gun on the table, exit the house, and let the officers help him; Mr. Heeter refused. (6:00–10:05).

Officer Bowers asked the other officers if they were ready to move inside to grab the gun, (10:06–10:10), following Sergeant Redding's statement that Mr. Heeter "put it on the table." (10:05). As it would turn out, Mr. Heeter had a black object, either a lighter or inhaler "shaped like a black gun" on the table. (ECF Nos. 131 at 493 –94; 133 at 956–57). At least seven officers then entered Mr. Heeter's home, most with their weapons drawn. (10:18–10:22). Officer Bowers stood with his rifle drawn by the wall separating the dining room from the living room. He was designated as the "point" officer. (10:36–10:37). Once inside, the officers instructed Mr. Heeter to walk away from the table to the corner of the room with his hands up. (10:23–10:35). Mr. Heeter did not follow the officers' orders. (10:37–11:30). The Heeters had multiple black cats,

---

[2] The Court generally cites to the Body-Worn Camera of Officer Robert Bruce, whose footage captured the scene. All time citations, e.g., "(0:00)" refer to the minute and second mark on this footage, entered at trial as Joint Trial Ex. 15, unless otherwise noted.

and one of these cats was sitting on the table in front of Mr. Heeter, obstructing the officers from seeing Mr. Heeter's hands. Mr. Heeter moved slightly towards the cat, leaning forward with nothing visible in his left hand. (11:30–11:32). Officer Bowers asked, "Where's the gun, I see the cat," and about a second later, fired five shots from his rifle at Mr. Heeter. (11:29–11:33). Mr. Heeter received multiple gunshot wounds and fell to the floor, face down. (11:33–11:40).

After Mr. Heeter was shot, Sergeant Redding called for emergency medical, ordering everyone to stand by and noting that Mr. Heeter was "down." (Sergeant Redding Body-Worn Camera, Joint Trial Ex. 17 at 11:34–11:40; *see* ECF No. 21 at 27 n.12). The police then began securing the scene in the dining room and searching the rest of the residence. (12:08–20:00). Officer Bruce and Officer Gilbert turned Mr. Heeter so that they could handcuff him, (12:36–13:05), but the police otherwise left Mr. Heeter lying face down on his stomach for nearly two minutes while a pool of blood surrounded him. (13:05–14:48). While Mr. Heeter was handcuffed, Officer Bowers waited off to the side until he was directed by Sergeant Redding to pass off his rifle and to stand outside. (14:23–14:37). Shortly after Officer Bowers left, Officer Bruce and Sergeant Redding turned Mr. Heeter on his side to help him breathe, and Officer Bruce held him on his side until paramedics arrived. (*Id.* at 14:47–20:00; *id.* at 15:27–15:29 (Officer Bruce noting that he was trying to keep Mr. Heeter's nose out of the pooling blood)).

Paramedics from the Columbus Fire Department arrived approximately 8 minutes after Mr. Heeter was shot. (20:05). In the period of time that elapsed from the shooting until paramedics arrived, no officer rendered any form of medical assistance other than turning Mr. Heeter to aid his breathing. (11:33–20:05). Paramedics soon removed the handcuffs before placing Mr. Heeter on a backboard and performing cardiopulmonary resuscitation. (23:56, 24:00–26:20). They then transported Mr. Heeter to OhioHealth Grant Medical Center hospital. (26:25; *see* ECF No. 25-7

3

at 1).  Mr. Heeter was pronounced dead shortly thereafter, at around 10:57 a.m.  (*See* ECF Nos. 25-15 at 1; 25-16 at 1–2).  The Coroner's Report determined the cause of death to be a gunshot wound to the chest.  (ECF No. 25-8).

Defendant Bowers was the only officer who shot Mr. Heeter.  None of the officers' body-worn camera footage showed whether Mr. Heeter was holding his firearm or was pointing it at the officers; all of the cameras' views are blocked, either by their angle or by objects in obstructing their views.  (*E.g.*, 11:33).  None of the officers reported seeing Mr. Heeter holding a gun while inside the home.  The first time Officer Bowers saw Mr. Heeter's gun was after he had shot Mr. Heeter, when the gun was at Mr. Heeter's feet.  (ECF No. 130 at 55–57).

### B.  Procedural Background

On November 20, 2020, Mr. Heeter's wife Karen and his children filed suit in the Franklin County Court of Common Pleas against the Columbus Police Department and Officer Kenneth Bowers, in both his individual and official capacities.  (ECF No. 1-1).  In that action, Plaintiffs alleged that "Defendant Bowers fired multiple shots at Mr. Heeter without cause and without adequate investigation," and then that Bowers and the other police officers failed to provide medical care to Mr. Heeter as he lay wounded afterward.  (*Id.* at 2).  Plaintiffs' Complaint asserted four claims for relief.  Plaintiffs' first claim sought damages under 42 U.S.C. § 1983 for Defendants' alleged violations of Mr. Heeter's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures without probable cause, the right to be free of and from the use of excessive force, and the right to adequate medical care while in custody.  (*Id.* at 10–11).  Plaintiffs' second, third, and fourth claims sought damages for Defendants' alleged commission of the state-law torts of assault, battery, and wrongful death, respectively.  (*Id.* at 11–12).  Defendants removed this action to this Court on December 18, 2020.  (ECF No. 2).

Thereafter, Defendants moved for summary judgment, and this Court granted summary judgment in part and denied it in part. *Heeter v. Bowers*, 2023 WL 2664412, at *17 (S.D. Ohio Mar. 28, 2023) (Marbley J) (ECF No. 37).  This Court granted Defendants' Motion with respect to Plaintiffs' Fourth Amendment unreasonable search and seizure claim against Officer Bowers, and their claim for 42 U.S.C. § 1983 municipal liability against the Columbus Police Department.  But it denied Defendants' Motion with respect to Plaintiffs' excessive force and deliberate inference claims against Defendant Bowers, including the state law claims against both Bowers and the Columbus Police Department.  *Id.*  Plaintiffs' 42 U.S.C. § 1983 excessive force and deliberate indifference claims against Defendant Bowers, as well as their state law claims of assault, battery, and wrongful death against Defendants Bowers and Columbus Police Department, remained.

Defendants Bowers and the Columbus Police Department appealed this Court's order on Motion for Summary Judgment.  *See Heeter v. Bowers*, 99 F.4th 900, 908 (6th Cir. 2024).  The Sixth Circuit affirmed this Court's denial of the state-law immunity and qualified immunity as to Officer Bowers in his individual capacity, and reversed the denial of the Columbus Police Department's request for summary judgment on the state-law claim. *Id.* at 904.  It held that Officer Bowers was not entitled to summary judgment on the excessive force claim, or immunity on the Fourteenth Amendment right to adequate medical care while in police custody claim.  *Id.* Subsequently, Plaintiffs remaining claims proceeded against Defendant Bowers, in his individual capacity, for the excessive force and deliberate indifference violation and state-law claim for wrongful death.  (*See* ECF Nos. 48; 21).

On July 7, 2025, the case proceeded to trial on the issues of excessive force, deliberate indifference to provide adequate medical care, and state-law wrongful death.  The jury returned a verdict in favor of Officer Bowers, finding that he had not violated Mr. Heeter's constitutional

right to receive adequate medical care or to be free from excessive force.  (ECF Nos. 97; 124).

Following the verdict, the Plaintiffs filed the present Motion for Judgment as a Matter of Law and

Motion for a New Trial.  (ECF No. 136).  These Motions have been fully briefed (ECF Nos. 138;

139) and are ripe for review.

## II.  STANDARD OF REVIEW

### A.  Judgment as a Matter of Law

A district court may grant judgment as a matter of law when a party has been fully heard

on an issue, and the court determines that a reasonable jury would not have legally sufficient

evidence to find for the party.  Fed. R. Civ. P. 50(a)(1).  If a court does not grant the motion and

submits the case to a jury, the court retains the ability later to decide the legal questions upon a

renewed motion for a judgment as a matter of law.  Fed. R. Civ. P. 50(b).

A motion for a judgment as a matter of law "may be granted only if in viewing the evidence

in the light most favorable to the non-moving party, there is no genuine issue of material fact for

the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."

*Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citing *Gray v. Toshiba

Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)).  In making this determination, the

court "may not weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment

for that of the jury."  *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citing

*Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010)); *Reeves v. Sanderson

Plumbing Prods.*, 530 U.S. 133, 150 (2000).  To succeed on such a motion, the movant must

"overcome the substantial deference owed a jury verdict."  *Radvansky*, 496 F.3d at 614.  The

movant must demonstrate that "there was no legally sufficient evidentiary basis for a reasonable

jury to find for [the prevailing] party."  *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789,

794 (6th Cir. 2004), *aff'd*, 548 U.S. 53 (2006) (internal quotation marks omitted).  The court should grant such a motion "only if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ."  *Karam v. Sagemark Consulting, Inc.*, 383 F.3d 421, 427 (6th Cir. 2004).

### B.  New Trial

Rule 59 allows parties to move for a new trial.  Fed. R. Civ. P. 59(a).  Courts are permitted to grant a new trial if a previous judgment "is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or [was] otherwise unfair to the moving party."  *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000).  When a party argues that the jury's verdict is against the weight of the evidence, the verdict will be upheld "if it was one which the jury reasonably could have reached."  *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014).  Determining whether a new trial is appropriate is "within the discretion of the trial court."  *Kramer Consulting, Inc. v. McCarthy*, 2006 WL 581244, at *3 (S.D. Ohio Mar. 8, 2006) (Marbley, J.).

### III.  LAW AND ANALYSIS

### A.  Motion for Judgment as a Matter of Law

Plaintiffs have moved for judgment as a matter of law against Officer Bowers on the issues of excessive force and failure to perform adequate medical care.  (ECF No. 136).  Plaintiffs argue in regard to the excessive force claim that Officer Bowers had "no rational connection" between the objective facts and circumstances surrounding the incident, and therefore, had no finding of probable cause to justify the shooting of his rifle.  (*Id.* at 4).  Plaintiffs continue with their deliberate indifference claim, stating that Officer Bowers had a constitutional duty to render medical care to

Mr. Heeter that is not overridden by the Columbus Police Department policy or chain of command. (*Id.* at 5).

### 1.    *Excessive Force*

The Court begins with the Fourth Amendment excessive force claim. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend. IV. It requires that an officer's use of force be objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 395–96 (1989). The use of deadly force in apprehension of a person is "subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985); *see Eastep v. City of Nashville*, 156 F.4th 819, 828 (2025). The Supreme Court has found the use of deadly force is only constitutional when "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee*, 471 U.S. at 11. In evaluation of an excessive force case, the reasonableness inquiry turns to answer the question of "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397.

Plaintiffs argue that Officer Bowers' subconscious inference that Mr. Heeter was pulling a gun out of his pocket was not derived from any articulable facts, and therefore was an unreasonable use of force. (ECF No. 136 at 7). Instead, they suggest that the evidence provided at trial to the jury members created no rational connection between the underlying objective facts and circumstances in the situation and Officer Bowers' decision to shoot Mr. Heeter. (*Id.* at 4.). As they note, Officer Bowers had an obstructed view of Mr. Heeter, and he never saw him point a gun at anyone. (*Id.* at 8). Moreover, Officer Bowers did not hear Mr. Heeter make any verbal threat— indeed, Mr. Heeter offered to put the gun up if the police would leave his home. (*Id.*). In Plaintiffs'

telling, once the officers were inside, Mr. Heeter stood "unarmed" in his dining room, and when he was ordered to remove his hands from his pockets, he attempted to abide by the command and was shot five times by Officer Bowers. (*Id.* at 10). Plaintiffs argue that because Sergeant Redding confirmed that Mr. Heeter placed the gun on the table before moving inside the residence, an objectively reasonable officer would have rationally inferred from those facts that Mr. Heeter was complying with orders. (*Id.* at 11–12).

Officer Bowers argues that the use of force exerted was reasonable in light of the facts and circumstances. (ECF No. 138 at 7). He believed the call was a "33," or a gun run, which is a dangerous type of call—not only for the officers, but to the subject and bystanders—in this case, the suicidal Mr. Heeter and his family members. (*Id.* at 8). He points out that he followed national policing standards, which permit officers to respond, with deadly force, to deadly threats, or to what they reasonably believed to be an immediate threat of bodily harm or death. (*Id.* at 15). In support, Officer Bowers' expert witnesses, Mr. Patrick Vehr and Mr. Melvin Tucker, testified regarding this policing standard. (*Id.*).

Where excessive force is claimed, the use of force is judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also Eastep*, 156 F.4th at 828; *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1004 (6th Cir. 2024); *King v. City of Columbus*, 2023 WL 6118256 at *3 (S.D. Ohio Sept. 19, 2023). As Officer Bowers points out, prior to his entry into the Heeter residence, he only had knowledge that: (1) a previous call was made earlier that morning regarding Mr. Heeter's suicidal threats, but Mr. Heeter could not be located; (2) Mr. Heeter was now armed with a gun; (3) Mr. Heeter said "not to send the police and don't even bother"; (4) Mr. Heeter stated that "if the police show[ed] up, he [couldn't] be held responsible for what happens," which was interpreted to be a threatening

9

statement by Officer Bowers; and (5) there were adult kids in the house. (ECF Nos. 138 at 8; 131 at 460).

In the timeline of events, at no point was Officer Bowers able to locate Mr. Heeter's gun due to his view of Mr. Heeter being obstructed. Sergeant Redding believed the gun to be on the table, but upon entering Mr. Heeter's home, none of the officers saw the gun on the table. Once inside, the officers continued ordering Mr. Heeter to put the gun down and telling him that they were there to help. In response, Mr. Heeter stated that the officers were "starting to tick [him] off," he did not want help, and wanted the officers to leave, indicating he would "put the gun up" then. (ECF No. 131 at 518). To Officer Bowers, the only signs were that Mr. Heeter was not following the commands to put the gun down. Thus, a reasonable jury could find that Officer Bowers was acting on the belief that Mr. Heeter was still armed and intent on not cooperating.

To succeed on a judgment as a matter of law, Plaintiffs must "overcome the substantial deference owed a jury verdict." *Radvansky*, 496 F.3d at 614. Plaintiffs have failed to surmount this high burden here. Plaintiffs have simply reiterated the undisputed facts of the case, in light of their assumptions of how a reasonable officer should have acted. But there was a genuine issue of material fact for the jury to decide: the reasonableness of Officer Bowers' use of force. And reasonable minds certainly could differ as to the propriety of his use of force, particularly given the uncertainty of exactly where Mr. Heeter's gun was, or what Mr. Heeter was moving to do immediately before he was shot. The jury's evaluation of the factual record and its credibility determinations should not be disturbed here. This is the kind of case where reasonable minds can and do differ, which militates against disturbing the jury's verdict. *See Karam*, 383 F.3d at 427 (requiring the "complete absence of proof" for a material issue exists, "or if no disputed issue of

fact exists on which reasonable minds could differ").  Therefore, the Court denies judgment as a matter of law on the excessive force claim.

### 2.      *Deliberate Indifference Claim*

Next, the Court looks to the Plaintiffs' Fourteenth Amendment deliberate indifference claim.  The Fourteenth Amendment requires government officials to render adequate medical care to those in their custody, including a person who has been "injured while being apprehended by the police."  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  The key question is whether the officers acted "recklessly in the face of an unjustifiably high risk that is either known or so obvious that should have been known."  *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317 (6th Cir. 2023).  To succeed on a claim, the moving party must prove an objective and subjective component.  *Hicks v. Scott*, 958 F.3d 421, 438 (6th Cir. 2020).  First, Plaintiffs must demonstrate a "serious medical need" that is so obvious anyone would understand it poses a substantial risk of serious harm.  *Heeter*, 99 F.4th at 916; *Hicks*, 958 F.3d at 438.  Second, Plaintiffs show evidence that the officer either knew of the risk of harm and disregarded it, or that they "recklessly disregarded a risk so obvious that they . . . should have known of it."  *Heeter*, 99 F.4th at 916 (citing *Lawler ex rel. Lawler v. Hardeman Cnty.*, 93 F.4th 919, 927 (6th Cir. 2024)).  The plaintiffs must prove the officer "responded to the risk in an unreasonable way."  *Id.*  Thus, such a claim arises from the officer's decisions in the face of the risk of harm.  *Id.*

Plaintiffs argue that the existence of a "policy, training, or order" created by the Police Department does not overcome the Fourteenth Amendment, and that Officer Bowers had fair notice that he is required to render medical care in appropriate circumstances.  (ECF No. 136 at 21).  Officer Bowers counters that his actions, in complying with Sergeant Redding's order, did

11

not recklessly disregard a risk of harm nor were unreasonable in any way because Officer Bowers did not leave Mr. Heeter alone and knew medics were on their way.  (ECF No. 138 at 32).

Plaintiffs have not overcome the substantial deference owed to a jury verdict and shown, that when all the evidence is taken in the light most favorable to Officer Bowers, there is no genuine issue of material fact, and reasonable minds could only conclude in their favor.  Officer Bowers was the point officer on scene, and thus was responsible for officer safety.  After Mr. Heeter was shot, Officer Bowers could not see Mr. Heeter's hands—Mr. Heeter was face-down on the floor. The house was not yet secured, and Officer Bowers was still responsible for ensuring safety.  There were many other officers on the scene, and these officers radioed for help, secured Mr. Heeter in handcuffs, and repositioned him to aid his ability to breathe while they waited for paramedics. After the scene was secured, and Mr. Heeter was handcuffed, Sergeant Redding ordered Officer Bowers to leave the house after the shooting to secure his rifle.  (14:23–14:37).  Subsequently, Officer Bowers followed that command and stepped out of the house.  (14:37–14:40).  Sergeant Redding immediately alerted the medics, while he and other officers secured the scene.  The evaluation of whether Officer Bowers was reckless in this circumstance is an issue best left to the jury to decide.  *See Scozzari v. Miedzianowski*, 597 F. App'x 845, 846, 848–49 (6th Cir. 2015) (affirming district court denial of judgment as a matter of law, reasoning that "[t]he district court correctly concluded that the jury could [find] Defendants were deliberately indifferent" where police interrupted paramedics rendering aid to search suspect for a weapon).

This case is tragic.  But there was a "legally sufficient evidentiary basis for a reasonable jury to find," as it did, in rendering a verdict for Officer Bowers. *White*, 364 F.3d at 794; *compare Scozzari*, 597 F. App'x at 849 (6th Cir. 2015) ("[W]e recognize the problems faced by police officers confronted with the necessity of attempting to meet conflicting objectives such as securing

12

the scene and summoning EMS."). Therefore, the Court denies judgment as a matter of law on the deliberate indifference claim.

The record provided sufficient evidence from which a reasonable jury could find in favor of Officer Bowers on both the excessive force and deliberate indifference claims. Given the substantial deference owed to the jury, this Court declines to set aside the jury's verdict and denies Plaintiffs' Motion for Judgment as a Matter of Law.

### B. Motion for a New Trial

In the alternative, Plaintiffs have moved for a new trial under Rule 59(a). Recall that courts are permitted to a grant a new trial if a previous verdict is "against the weight of the evidence," but the verdict will be upheld if it is one that a "jury reasonably could have reached." *Conte*, 215 F.3d at 637; *Innovation Ventures, LLC*, 763 F.3d at 534. Motions on these grounds are rarely granted. *Id.*

Plaintiffs provide four grounds for a new trial. First, Plaintiffs contend that the jury verdict is premised on legally insignificant evidence. (ECF No. 136 at 22). Second, Plaintiffs argue that the jury's verdict on the Fourth Amendment excessive force claim is against the manifest weight of the evidence. (*Id.* at 22). Third, Plaintiffs state the jury would not have returned a verdict in favor of Officer Bowers if given "complete instructions" relating to the principles of probable cause. (*Id.* at 24). Fourth, Plaintiffs raise a *Batson* challenge in relation to Officer Bowers' striking of a transgender juror, Juror 1. (*Id*. at 26).

Officer Bowers answers each argument in turn. First, he reiterates that the jury verdict was not premised on legally insufficient evidence. Second, he argues that Plaintiffs are simply seeking another bite at the apple with their Fourth Amendment excessive force argument for a new trial, as the jury made its determination as to the credibility of testimony. (*Id.* at 35–36). Third, he

13

argues that the jury instruction for excessive force was a correct statement of the law, and not confusing or misleading to the jury. (*Id.* at 38). Fourth, he argues that the Court properly overruled Plaintiffs' *Batson* challenge due to Juror 1's answers in relation to policing and police training. (*Id.* at 43).

The Court considers each issue in turn.

***Evidentiary sufficiency.*** First, Plaintiffs incorporate all the legal arguments set forth under their Motion for Judgment as a Matter of Law as part of their Motion for a New Trial. But the evidence presented was legally sufficient for a reasonable jury to return the verdict, and thus does not provide an independent basis for a new trial. *See* Section III(A), *supra*. Plaintiffs' renewed argument regarding the evidentiary basis for the jury verdict fails here, too. *See Conte*, 215 F.3d at 638 (denying a motion for a new trial on the same grounds as the motion for judgment as a matter of law, because the jury's verdict in the case "could reasonably have been reached").

***Weight of evidence.*** Second, Plaintiffs urge this court to grant a new trial, arguing that the jury's verdict was against the manifest weight of the evidence because Officer Bowers's "entire defense" was premised on the credibility of his testimony, and that testimony cannot be believed. (ECF No. 136 at 23).

Plaintiffs argue that Officer Bowers' "entire defense" is premised upon the credibility of his own recollection of the incident. (*Id.*). They point to his reliance on the testimony of his police opinion expert witness, Officer Patrick Vehr, a Defense Tactics Instructor at Columbus Division of Police, as premised on the assumption that Officer Bowers was correctly describing the incident. In essence, Plaintiffs do not find Mr. Vehr to be a strong witness, accusing him of being "too-credulous" to Bowers' description of the incident. (*Id.*). Because they argue that Bowers' recall is an "outright fabrication," they posit that Vehr is not believable. (*Id.*). Officer Bower counters

14

that Plaintiffs are requesting a new trial based upon their disagreement with how the jury weighed the credibility of the witnesses, including Officer Bowers and Expert Witness Vehr.  (ECF No. 138 at 36).

Plaintiffs' argument here is without merit.  As the Sixth Circuit has pointed out, "witness credibility is solely within the jury's province, and this court may not remake credibility determinations."  *Crabbs v. Pitts*, 2019 WL 4737655, at *5 (S.D. Ohio Sept. 27, 2019) (Marbley, J.) (quoting *McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005)).  A court is not entitled to reconsider the credibility of witnesses "merely because other inferences or conclusions could have been drawn or because other results are more reasonable."  *Id.* (quoting *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 448 (6th Cir. 2011)).  Here, Plaintiffs take issue with the fact that Mr. Vehr's testimony and Officer Bowers' defense rest on Officer Bowers' recall of the facts, arguing that his recall is fabricated and cannot be believed by a reasonable jury.  (ECF No. 136 at 23).  But Plaintiffs have failed to provide any authority in support of their position, and do not show how this evidence is fabricated:  instead, they just seem to disagree with Officer Bowers' interpretation of Mr. Heeter's movement immediately before his was shot.  (*Id.*).  Again, the evidence presented was sufficient for a reasonable jury to return the verdict.  *See* Section III(A), *supra*.  Thus, Plaintiffs' argument here fails as well.

***Jury instructions.***    Third, Plaintiffs argue that the jury instructions were incomplete concerning the principles of probable cause.  Courts review jury instructions "as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury."  *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003) (citing *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir. 1998)).  "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or

give an inadequate understanding of the law." *Id.* Indeed, "[j]ury instructions are proper, if as a whole, they fairly and adequately submitted the issues and applicable law to the jury." *Gillispie v. City of Miami Township*, 2023 WL 4868486, at *29 (S.D. Ohio July 31, 2023) (quoting *Troyer v. T.JohnE. Prods., Inc.*, 526 F. App'x 522, 525 (6th Cir. 2013)).

At trial, this Court provided the jury with Jury Instruction No. 27, which set forth the following definition of probable cause:

> The Fourth Amendment to the United States Constitution protects persons from being subjected to excessive force by law enforcement officers. In other words, a law enforcement official may only use the amount of force necessary under the circumstances. Every person has the constitutional right not to be subjected to excessive force.

> In this case, Ms. Heeter claims that Officer Bowers violated Billy Heeter's Fourth Amendment rights by using deadly force against him. An officer may not use deadly force unless the officer had probable cause to believe the subject posed an imminent threat of serious physical harm, either to the officer or to others. Probable cause exists when, under all circumstances known to the officer at the time, an objectively reasonable officer would conclude that the individual presented an imminent threat of serious physical harm.

> When considering whether an officer reasonably believed that a person posed an imminent threat of serious bodily harm, you must consider the totality of the circumstances. The following considerations are relevant, though none is dispositive and this list is not exhaustive: (1) why the officer was called to the scene; (2) whether the officer knew or reasonably believed that the person was armed; (3) whether the person verbally or physically threatened, resisted, disobeyed, or otherwise acted aggressively towards the officers; (4) how far the officer was from the person; (5) the duration of the entire encounter; (6) whether the officer knew of any ongoing mental or physical health conditions that may have affected the person's response to the officer; and (7) whether the officer could have diffused the situation with less forceful tactics.

> You should consider all the relevant facts and circumstances leading up to the time of the encounter that officer Bowers reasonably believed to be true at the time of the encounter. The reasonableness of defendant's acts must be judged from the perspective of a reasonable officer on the scene. The concept of reasonableness makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.

16

(ECF No. 122 at 31–32).  Plaintiffs sought a change to the probable cause definition.  Specifically, they requested the addition of the following language:

> An officer only has probable cause if the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in reaching that belief.
>
> Subjective good faith, "hunches," or mere suspicion are not enough to form probable cause.  An officer must point to specific facts based on the officer's stated perceptions which, taken together with rational inferences, reasonably support the officer's conclusion.

(ECF No. 118 at 2).  This Court denied that request, determining that the requested instruction addressing what probable cause is not would be more difficult for jurors to grasp.  (*See* ECF No. 134 at 1072–74).

Plaintiffs now argue that the definition of probable cause provided to the jury left out the "key principle" of what an officer's good faith belief or "hunch" is without the additional instruction, and the jury did not know "positive attributes and negative boundaries of probable cause."  (ECF No. 136 at 25–26).  Officer Bowers counters that Jury Instruction No. 27 was a correct statement of the law and did not confuse or mislead the jury, because the instruction accurately informed the jury as to when an objectively reasonable officer has probable cause.  (ECF No. 138 at 38–42).  Thus, he argues that the instruction was correct and complete and allowed the jury to consider "all the relevant facts and circumstances leading up the event."  (*Id.*).

The Court based its probable cause instruction on the U.S. Court of Appeals for the Ninth Circuit's pattern jury instruction and found Plaintiffs' request regarding the probable cause instruction to be suggestive.  (*Id.*).  Plaintiffs have failed to demonstrate how the exclusion of this instruction constituted a substantial error.  The given jury instruction provided that probable cause would include a consideration of "all the relevant facts and circumstances," and inquired as to Officer Bowers' knowledge and reasonable beliefs.  (*See* ECF No. 122 at 31–32); *cf. Heeter*, 99

17

F.4th at 912–13 (evaluating probable cause based on the threat of "significant threat of death or serious physical injury," "from the perspective of a reasonable officer in [Officer Bowers'] position"). As Plaintiffs themselves admit, (*see* ECF No. 136 at 25–26), there is no "reducible" or "precise" probable cause quantification or definition, but instead the inquiry yields itself to "a more flexible, all-things-considered approach." *Florida v. Harris*, 568 U.S. 237, 243–44 (2013); *Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."). The Court agrees with Officer Bowers. Plaintiffs have not shown that the jury instruction resulted in unfairness at trial. *See Hurt v. Commerce Energy, Inc.*, 92 F. Supp. 3d 683, 695 & n.62 (N.D. Ohio 2015) (citing *Troyer*, 526 F. App'x at 525) ("[M]ere error in the jury instructions does not itself require a new trial if the error is harmless."), *on reconsideration*, 2015 WL 4629242 (N.D. Ohio Aug. 3, 2015), *aff'd*, 973 F.3d 509 (6th Cir. 2020). Thus, Plaintiffs' argument that the jury received improper instruction fails.

  ***Jury selection challenge.*** Fourth, and finally, Plaintiffs raise a *Batson* challenge, urging the Court to find the trial unfair against Plaintiffs because Officer Bowers struck the only transgender juror. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) ("[T]he . . . privilege to strike individual jurors through preemptory challenges, is subject to the commands of the Equal Protection Clause."); *see also J.E.B. v. Alabama*, 511 U.S. 127, 128–29 (1994) (noting that *Batson*'s protections were extended to civil cases and "hold[ing] that gender, like race, is an unconstitutional proxy for juror competence and impartiality").

  A *Batson* challenge proceeds in three steps. First, the party challenging the strike "must establish a prima facie case of race or gender discrimination." *United States v. Kimbrel*, 532 F.3d 461, 466 (6th Cir. 2008). Then, the burden shifts to the proponent of the strike who must offer a

18

neutral explanation.  *Upshaw v. Stephenson*, 97 F.4th 365, 376 (6th Cir. 2024).  Third, the burden

shifts back to the challenger, and the court decides whether the challenger has shown purposeful

discrimination, which includes whether the proponent's stated reasons to strike were "actual

reasons or instead were a pretext for discrimination."  *United States v. Jackson*, 2026 WL 735066,

at *7 (6th Cir. Mar. 16, 2026) (quoting *Flowers v. Mississippi*, 588 U.S. 284, 298 (2019)).

Plaintiffs argue that Juror 1 was stricken due to her gender identity in violation of the

Fourteenth Amendment's Equal Protection Clause.  (ECF No. 136 at 26).  Juror 1 was a transgender

individual, who also made statements regarding her opinion of law enforcement.  In particular, she

stated:

> When it comes to a public servant of the country and of the county and stuff, I would want them to be trained—not really just trained, just well educated in the fact of—just like they deal with people every day, people from all different backgrounds, all different creeds, nationalities, genders, sexuality, et cetera.  With this diversity of people they have to deal with on a daily basis, I would hope that a law enforcer has the—really just kind of like—I wouldn't call it street smarts.  I'm a little bad with words sometimes.  But just the notion that every situation is different, and they should not generalize things at a first glance.
>
> Now, I know that's kind of impossible because we're all human and, generally, we make mistakes and things.  But, when you're in such a really high position where you basically do hold the lives of other people in other's hands, I would hope that you're thinking with a good head on that.

(ECF No. 128 at 144; *see id.* at 168).  Defense counsel continued to ask the venire whether anyone

had felt personally mistreated or knew someone who had been mistreated by the police.  (*Id.* at

167).  Juror 1 raised her hand.  At sidebar, she identified herself as transgender, and explained:

> So I'm a transgender.  And, in my time of just seeing the way things and the world have gone, while I do support the idea of having law enforcement—and I don't think necessarily everyone's always out to get someone.  *I also know for a fact a lot of bias does exist within our law enforcement community.*
>
> And, with this being said, *I would not be lying to you if I didn't say that this does affect my decision making when it comes to how I think about law enforcement and stuff, because it's just something that I think about in my daily life, that I deal with*

19

> *on a daily basis.* I didn't quite know how to ask it when the questions were being asked. My apologies for random, but I thought that needed to be shared with the Court.

(*Id.* at 168) (emphasis added).

Plaintiffs point to the Supreme Court's decision in *Bostock v. Clayton County*, which held that Title VII of the Civil Rights Act of 1964 protects employees against discrimination based on sexual orientation and gender identity. 590 U.S. 644, 651–52 (2020). In that case, Gerald Bostock, a child welfare advocate in Clayton County, Georgia, was fired for conduct "unbecoming" of a county employee after he began participating in a gay recreational softball league. *Id.* at 653. The Court reasoned that homosexuality and transgender status are "inextricably bound up with sex," *id.* at 660–61, making it "impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* at 660. Under this framework and in light of the text of Title VII, the Court found that "[a]n employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex." *Id.* at 651.

Relying on *Bostock*, Plaintiffs argue that it would be impossible to discriminate against a person's sexual orientation without discriminating against that person based on sex. (ECF No. 136 at 28). They argue that it would be "similarly impossible" to discriminate against Juror 1 without discriminating against her originally assigned sex at birth. (*Id.*). In addition, they argue that the defense failed to strike Jurors 42, 86, and 158, who—in their view—held more prejudicial views against law enforcement. (ECF No 136 at 32–33). Plaintiffs assert that Juror 42 had similarities to their story, because Juror 42 turned to the police for a family member's attempted suicide. (*Id.* at 32). Plaintiffs also argue that both Jurors 86 and 158 had previous bad interactions with law

enforcement and that Juror 86 was previously a criminal defendant. (*Id.* at 32–33). Thus, Plaintiffs say they have established a prima facie case of gender discrimination against Juror 1.

Officer Bowers counters that Juror 1 was appropriately stricken based on her beliefs regarding law enforcement. (ECF No. 138 at 45). Specifically, he underscores Juror 1's statements that she knows "for a fact a lot of bias does exist within our law enforcement community" and that she "would be lying . . . if [she] didn't say that this affects my decision making when it comes to how I think about law enforcement and stuff." (*Id.*). To support his challenge, he points out that peremptory challenges based on negative, hostile, or concerning views on law enforcement have been upheld and found not to be a violation of *Batson*. (*Id.* at 45–46). Officer Bowers argues that Plaintiffs' assertion of failure to strike Jurors 42, 86, and 158 falls flat because Juror 42 did not suggest that she had a negative experience with the police, and Jurors 86 and 158 never made it to the jury box or to an alternative seat. (*Id.* at 47–48). Thus, he offers a neutral explanation for the striking of Juror 1.

First, the Court must determine whether Plaintiffs have shown purposeful discrimination. "*Batson* . . . applies to gender discrimination, to a criminal defendant's peremptory strikes, and to civil cases." *Flowers v. Mississippi*, 588 U.S. 284, 301 (2019). Although *Batson* extends to gender discrimination, the Supreme Court has not decided whether transgender status is a quasi-suspect class under the Equal Protection Clause. *Bd of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 872 (S.D. Ohio Sept. 26, 2016) (Marbley, J.); *United States v. Skrmetti*, 605 U.S. 495, 517 (2025) ("This Court has not previously held that transgender individuals are a suspect or quasi-suspect class."). Most courts have not expanded the reach of *Batson*.[3] The Sixth Circuit has instructed that transgender status is not a suspect class, and

---

[3] The Ninth Circuit expanded the reach of *Batson*, holding that "the exclusion of the juror because of his sexual-orientation violated *Batson*" on the understanding that striking jurors on the basis of gender harms the litigants,

21

therefore subject to rational basis review. *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023), *aff'd sub. nom United States v. Skrmetti*, 605 U.S. 495.

Even if Plaintiffs could mount a prima facie case of gender discrimination (or sexual identity discrimination) for the striking of Juror 1, Officer Bowers has shown a neutral reason for the challenge—her beliefs on policing and law enforcement. Peremptory strikes are permitted against prospective jurors who voice opinions on policing. *See Pirtle v. DeWitt*, 31 F. App'x 191, 192 (6th Cir. 2002) ("Peremptory strikes based on a juror's perceived hostility to law enforcement are permissible."); *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 460–61 (6th Cir. 2020) (affirming the district court's finding that the peremptory striking was valid under *Batson*, where a juror expressed negative encounters with law enforcement). The record establishes Officer Bowers' neutral reason for striking Juror 1. Thus, even if a *Batson* challenge for striking a transgender juror were permissible, it would still fail in this instance, because Plaintiffs have not shown any pretext to purposeful discrimination on Officer Bowers' part. Plaintiffs' *Batson* challenge is denied.

In sum, the jury verdict was not against the weight of the evidence, as there was sufficient evidence in the record for a reasonably jury to find for Officer Bowers at trial, and to credit his testimony and the testimony of his expert witness, Mr. Vehr. The trial was not prejudiced, biased, or otherwise unfair to Plaintiffs due to the jury instructions on probable cause, or the striking of Juror 1. Accordingly, this Court denies Plaintiffs Motion for a New Trial.

## IV. CONCLUSION

"Juries are in the business of deciding material issues of fact. This case was no exception: A jury determined that [Officer Bowers] acted reasonably in a tense and dangerous situation."

---

community members, and other jurors because it "reinforces stereotypes and creates an appearance that the judicial system condones the exclusion of entire class of individuals." *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 475–77 (9th Cir. 2014).

*Goodwin v. Richland Cnty.*, 832 F. App'x 354, 355 (6th Cir. 2020).  While Plaintiffs might "want[] another shot to convince another jury otherwise," *id.*, or to obtain judgment as a matter of law, there is simply no basis for either type of requested relief.  For the foregoing reasons, Plaintiffs' Motions for Judgment as a Matter of Law and for a New Trial are **DENIED.**

　　　　**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　**ALGENON L. MARBLEY**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**DATED:  March 31, 2026**